GEORGE SYFIE ET AL., APPELLANTS, V. TRI-COUNTY HOSPITAL DISTRICT ET AL., APPELLEES.

184 N. W. 2d 398

Filed February 26, 1971. No. 37642.

Julius D. Cronin and Edward E. Hannon, for appellants.

Philip R. Riley, Jewell, Otte & Pollock, William W. Griffin, Henry F. Reimer, and August F. Schurman, for appellees.

Michael V. Smith, Young, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, and Person, Dier & Person, for amici curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The principal question involved in this case is the constitutionality of the Nebraska Local Hospital District Act enacted by the Sixty-ninth Session of the Legislature in 1959. The particular statutes involved are sections 23-343.20 to 23-343.57, R. R. S. 1943. The defend-

ant, Tri-County Hospital District, was organized under these provisions, comprising portions of Holt, Boyd, and Knox Counties. The district court found that the defendant Tri-County Hospital District was validly created under Nebraska law and that the Nebraska Local Hospital District Act (hereinafter referred to as the Hospital District Act) was constitutional. We affirm the judgment of the district court.

The pertinent portions of the applicable statutes necessary for determination of this appeal are as follows:

"Whenever it shall be conducive to the public health and welfare, a local hospital district may be established in the manner and having the powers and duties provided in sections 23-343.20 to 23-343.47." § 23-343.20, R. R. S. 1943.

"Whenever the formation of a local hospital district is desired, a petition, stating (1) the name of the proposed district, (2) the location of the hospital to be maintained by such proposed district, and (3) the territory to be included within it, which territory should be contiguous, may be presented to the county board of the county in which the land, or a greater portion of the land, in the proposed district is situated." § 23-343.21, R. R. S. 1943.

"Upon receipt of such petition, the county board shall examine it to determine whether it complies with the requirements of section 23-343.21. Upon finding that such petition complies with such requirements, the county board shall set a hearing thereon and cause notice thereof to be published at least three successive weeks in a newspaper of general circulation throughout the area to be included in such proposed district. Such notice shall contain a statement of the information contained in such petition and of the date, time, and place at which such hearing shall be held and that at such hearing proposals may be submitted for the exclusion of land from, or the inclusion of additional land in such proposed district or for modification of the boundaries of the area into which such district shall be divided for the purpose of election

of members of the board of directors." § 23-343.22, R. R. S. 1943.

"After completion of the hearing required by section 23-343.22, the county board shall order such changes in the boundaries of such proposed district or of the areas into which such proposed district is to be divided as it shall deem proper, but no such change shall reduce the total assessed valuation of all taxable property, except intangible property, within such proposed district below three million dollars. The county board shall also order that the question of the formation of such district, as set forth in the petition and any changes therein ordered by the board, shall be submitted to the electors of such proposed district at a special election to be held for that purpose * * *." § 23-343.23, R. R. S. 1943.

"If the county board finds that a majority of the votes cast in the area of the proposed district favor the formation of such proposed district, it shall so declare by resolution entered on its records and forward a copy of such resolution to the county board of each county containing land embraced within such proposed district, and the district shall thereupon be fully organized." § 23-343.24, R. R. S. 1943.

In 1968, under the provisions of the Hospital District Act, a group of citizens representing towns in Boyd County, Nebraska, began a petition drive to form the defendant Tri-County Hospital District. They submitted their petition to the Boyd County board which found that all requirements of section 23-343.21, R. R. S. 1943, were complied with. The boundaries of the proposed district included all of Boyd County, approximately 225 sections of contiguous land in Holt County, and approximately 34 sections of contiguous land in Knox County.

The Boyd County board held a hearing on the matter, found that all conditions required by law had been met, and that the question of the formation of the district should be submitted to the electorate under the provisions of the statute. A special election was ordered to be

held on August 6, 1968. At this election the formation of the defendant Tri-County Hospital District was approved by a majority of the voters. The Boyd County board certified the election results on August 12, 1968. This action was brought in the district court for Boyd County by the plaintiffs for themselves and others contending that the Tri-County Hospital District had been illegally formed and not in compliance with the statute, and that the Hospital District Act as recited above was unconstitutional.

It is not questioned but that it is within the power of the Legislature under the general welfare clause to further the public health, convenience, or welfare by enacting legislation which allows citizens to establish hospital districts which will benefit those living within the proposed district. It is also clear that it is within the Legislature's power generally to delegate the enforcement of such legislation to administrative authorities under proper standards.

Boiled down, the plaintiffs claim that when a statute permits a group of individuals to begin the formation of a public district and outlining its boundaries, there must be a provision for an appropriate tribunal to determine if the lands have been properly included or excluded from the proposed district and second, whether the organization of the district is for the public convenience and welfare. Their argument is drawn from the language of our prior decisions in Anderson v. Carlson, 171 Neb. 741, 107 N. W. 2d 535, 83 A. L. R. 2d 831; Summerville v. North Platte Valley Weather Control Dist., 170 Neb. 46, 101 N. W. 2d 748; and Elliott v. Wille, on rehearing, 112 Neb. 86, 200 N. W. 347. The gist of these cases requires that there be a provision allowing a landowner in the district the opportunity to be heard by a competent tribunal on the question of whether his property has been arbitrarily or unjustly included within the boundaries of the district. We feel that the precise language of section 23-343.23, R. R. S. 1943, recited pre-

viously in this opinion, is a complete answer to such an argument. It seems to us that the language of the Hospital District Act was drawn with the specific requirements of the Summerville, Anderson, and Elliott cases in mind. The procedure provides for a hearing and grants authority to the county board to exclude or include land in the proposed district. This is based upon the testimony to be given by the interested citizens at the hearing as set up in the statute. The use of such a procedure is actually seen in this case. The record reveals that after the notice of hearing, the hearing was held, and at this hearing some Holt County residents asked that their land be excluded from the proposed district. The record reveals that all of these requests were granted.

Plaintiffs also argue that there is no provision for determining whether the district should be formed at all, that is, whether the district is actually for the public convenience and welfare. It is quite difficult to understand the precise nature of the argument the plaintiffs make. It is quite semantical in nature and relies upon the emphasization of the word "shall" in section 23-343.23, R. R. S. 1943. The apposite answer to this argument is that the plaintiffs have ignored the use of the word "may" found in the further provision of section 23-343.20, R. R. S. 1943, which states: "Whenever it shall be conducive to the public health and welfare, a local hospital district *may* be established in the manner and having the powers and duties provided in sections * * *." (Emphasis supplied.) In other words, the board cannot act to establish such a district until it *shall* be conducive to the public health and welfare. It, therefore, appears that no other inference could be drawn from this clear, explicit language of the statute but that the county board is given the power to determine if the proposed district will be conducive to the public health and welfare. Here again the Hospital District Act appears to have been drawn strictly within the

judicial sanctions expressed by this court in State ex rel. Harris v. Hanson, 80 Neb. 724, 115 N. W. 294, on rehearing, 80 Neb. 738, 117 N. W. 412. That case involved the same question as is involved here, namely, the constitutionality of statutes which set up the procedure for the formation of (drainage) districts. In that case section 1 of the drainage district law provided: "Whenever it will be conducive to the public health, convenience or welfare * * * to drain any wet land, * * * then a drainage district may be formed and may proceed as hereinafter provided, for the purpose of inaugurating, constructing, controlling and maintaining said work or works of public improvement." This is almost identical language to section 23-343.20, R. R. S. 1943. Other sections of the act examined in the Hanson case are remarkably similar to the sections of the Hospital District Act recited herein.

This court held in that case that there was a provision providing for the determination of public health, convenience, and welfare. It said: "It is evidently the intention of the Legislature that such improvement should not be brought about, except that it be for the public health, convenience or welfare. But is it possible that the specific provisions of the act may be complied with and the expressed intention of the legislature defeated? * * * The (county) board is not permitted to take into consideration the private advantage which would be gained by any individual; but, on the other hand, it shall fix the boundaries with a view to promoting the interest of the drainage district, and with a view to doing justice and equity to all persons, and this must necessarily be done with a consideration for the public health, convenience or welfare. Although drainage laws are liberally construed, yet we are of the opinion that a strict construction placed upon this act would not permit us to arrive at any other conclusion. The inference that the county board shall determine the public utility of the proposed improvement is not

only permissible, but a necessary construction to be placed upon the language used. It is the board's imperative duty to act upon the presentation of a proper petition. It is not its imperative duty to fix the boundaries if the organization of the district would not promote the public health, convenience or welfare. * * * The legislature might well have said in express terms that the county board should make a finding that the organization of the proposed vicinity would be of public utility; but the inference is strong, from the language actually used, that it was the intention of the legislature that the district should not be organized, except that the county board could prescribe such boundaries for the proposed district, which, if organized and promoted under the provisions of the act, would in fact promote the public health, convenience or welfare." State ex rel. Harris v. Hanson, *supra.*

It seems apparent to us, under the construction of the Hanson case, that the Legislature intended the appropriate county board should have the power to determine the public health, welfare, and convenience of a proposed hospital district. A contrary construction would be irrational, and it is the duty of this court to give the language of an act a reasonable construction in harmony with the presumption of constitutionality.

Avoiding the necessity for any reexamination of Elliott v. Wille, *supra;* Anderson v. Carlson, *supra;* and Summerville v. North Platte Valley Weather Control Dist., *supra,* it is clear that the present Hospital District Act comes well within the restrictive requirements of these cases construing the due process clause in the Constitution of Nebraska. It is further apparent that the Legislature intended, as a condition precedent to the Hospital District Act, a hearing designed to assure that the Act would only be used exclusively for the public health, welfare, and convenience. A reading of the scheme and design of the whole act further reenforces this conclusion.

Plaintiffs next contend that the Hospital District Act

is unconstitutional because it allows one county board to include territory of a separate county in order to form one contiguous hospital district. Plaintiffs argue this is a "division of county" or an addition of the territory of one county to an adjoining county in violation of Article IX, section 2, of the Constitution of Nebraska. This argument was answered in the case of State ex rel. Sheffer v. Fuller, 83 Neb. 784, 120 N. W. 495, where this court stated: "It is argued that the statute is void in so far as it assumes to authorize the creation of a drainage district within two or more counties; that the proceedings in the case at bar were instituted and carried on in Saunders county, where the greater part of said district is situate, and that, as relator's land is in Cass county, they are void as to his real estate. We have not been cited any authority to sustain the proposition advanced and are not inclined to adopt it. It is competent for the state to authorize the creation of governmental agencies for the enforcement of its police power, and for the legislature to clothe county commissioners, supervisors, or any other administratrive (sic) officer or board with authority to establish a district for the reclamation of swamp, overflowed or wet lands, or lands so subject to inundation as to destroy their utility or to constitute a menace to the public health. The fact that such bodies of land may extend into two or more counties does not render the legislature powerless to include contiguous tracts into one district for the more convenient exercise of the police power." This court's discussion of drainage districts is equally applicable to the formation of hospital districts. The power given the county board in the Hospital District Act is a reasonable provision and does not violate Article IX, section 2, of the Constitution of Nebraska.

It is contended that even if the Hospital District Act is constitutional, plaintiffs should prevail because of certain alleged irregularities in the formation of this particular district. Section 23-343.22, R. R. S. 1943, of the Hos-

pital District Act calls for notice of the county board hearing to be published in the appropriate newspaper at least 3 "successive" weeks. The notice in this case was published in three Boyd County newspapers on June 6, June 13, and June 20, 1968. The hearing was held on June 24, 1968, 18 days after the first publication date. Since this was 3 days short of a full 3 weeks, plaintiffs claim the notice requirement was not fulfilled.

A similar statutory requirement was construed by this court in Johnson v. Richards, 155 Neb. 552, 52 N. W. 2d 737, wherein it was stated: "The statute requires that notice of the time and place of proving a will shall be given by publication in a newspaper designated by the judge of the county court 'three weeks successively, and no will shall be proved until notice shall be given as herein provided * * *.' § 30-217, R. R. S. 1943. Publication of notice sufficient to satisfy the demands of this statute was determined many years ago. The requirement of publication of a notice in a newspaper 'three weeks' is complied with by the publication thereof in a weekly paper on one day of each of three weeks, that is, three successive weekly publications. The notice is complete upon distribution of the last issue of the paper containing the notice though three full weeks have not elapsed since the first publication."

It is therefore clear that the Hospital District Act does not call for a full 3 weeks' period before it is complete. The notice in this case was sufficient, having met all statutory requirements.

Summarizing, the questions of public policy, convenience, and welfare as related to the creation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, such as hospital districts, or any change in the boundaries thereof, are, in the first instance, of purely legislative cognizance, and when delegated to any public body having legislative power, any action in regard thereto does not come within the due process clause of either the state or federal Constitu-

tions. Campbell v. Area Vocational Technical School No. 2, 183 Neb. 318, 159 N. W. 2d 817; Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257; Ruwe v. School District, 120 Neb. 668, 234 N. W. 789; Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397; Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700. This court has long adhered, without deviation, to this statement of general principle. The only remaining question is whether the delegation of this general legislative power comes within the standards and requirements of our earlier decisions pertaining thereto. In essence, then, the creation of a hospital district is a legislative act and no guidelines are constitutionally required beyond the requirement that the county board must find that the district will be conducive to the public health and welfare and set the boundaries after a hearing afforded to all persons interested. It is clear that the purpose of the hearing is not to prove or disprove certain jurisdictional facts, but to provide a forum for interested persons to express their views in aid of the legislative decision to be made on the formation and boundaries of the district. It is further apparent that the Legislature has furnished some guidelines in that the district must have not less than $3,000,000 assessed valuation and the land is to be contiguous. It seems quite apparent, even asuming a strict application of the Summerville, Elliott, and Anderson cases, that the standards in this legislative delegation meet all constitutional standards. The extensive argument of the plaintiffs reciting the possibility of abuse of the powers granted is irrelevant to whether the act comes within the permissible power of delegation by the Legislature. The Legislature has adopted a policy which recognizes that the need for hospital care goes beyond the city, village, or county lines and has enacted the Hospital District Act as a means of implementing this policy. This is clearly within its police powers in the interest of health,

welfare, and convenience. The implementation of this legislation by the delegation to the county board of one of the counties involved is in all respects a reasonable, proper, and constitutional delegation of legislative power in this area. When these requirements are tied in with a provision that the electorate of the proposed district must adopt it by a majority vote it further reenforces the conclusion that such a scheme is constitutionally secure.

The judgment of the district court is correct and is affirmed.

AFFIRMED.