THOMAS W. GREIN, APPELLEE, v. BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF FREMONT, IN THE COUNTY OF DODGE, STATE OF NEBRASKA, ET AL., APPELLANTS.

343 N.W.2d 718

Filed January 13, 1984. No. 82-576.

Sidner, Svoboda, Schilke, Wiseman, Thomsen & Holtorf, for appellants.

John F. Kerrigan and William G. Line of Kerrigan, Line & Martin, for appellee.

Neal E. Stenberg, for amicus curiae Nebraska Association of School Boards.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

SHANAHAN, J.

Thomas W. Grein sued the Board of Education of the School District of Fremont to declare void a contract between the school district and a contractor submitting the second-lowest bid. Grein claimed the contract resulted from a closed session of the board in violation of the "Public Meetings Laws," Neb. Rev. Stat. §§ 84-1408 et seq. (Reissue 1981). The district court, sustaining Grein's motion for summary judgment, held that the closed session violated the Public Meetings Laws and that the resulting contract was void. The district court then enjoined the board from further violation of the Public Meetings Laws. We affirm in part and reverse in part with directions.

The questioned meeting of the board took place on January 4, 1982. At an unspecified date before the

meeting, a representative of Risor & Barney, Inc. (contractor), the low bidder on the school boiler project, met with one of the engineers of Clark Enersen Partners, the architectural firm employed by the school district. (Clark Enersen, its architects, engineers, and representatives, irrespective of professional nomenclature, will hereinafter be called the "architect.") The contractor informed the architect about the contractor's error in computing its bid, which resulted in underbidding the project by an amount up to $3,000. It was the impression of the architect that the contractor was soliciting support for a request to increase the amount of the bid in view of the error.

As a result of the meeting with the contractor, the architect met with the board president and other representatives of the school district during the evening shortly before the regular meeting of the board on January 4, 1982. At this preliminary meeting the architect mentioned a possible problem in view of the low bid. The architect requested a closed session of the board to disclose reasons for recommending the second-lowest bid, and declined to elaborate on these reasons in an open session. The architect's reasons for requesting the closed session and for rejecting the contractor's low bid can be summarized as follows: (1) An absence of facts to substantiate the low bidder's inability to perform the contract; (2) A conclusion by the architect that there had been "suggestion and inference" that the low bidder was soliciting assistance from the architect to increase the amount of the bid; (3) An award of the contract to the contractor contrary to recommendations of the architect expressed in an open meeting would cause "difficulties in the [architect]-contractor relationship"; (4) Public disclosure of the error by the contractor would needlessly injure the reputation of the contractor, notwithstanding that the error in bidding may have been an honest mistake misinterpreted by the pub-

lic; (5) On account of a deadline for federal funding, the architect did not delay bidding to investigate the experience and ability of the contractor; (6) The architect's opinion that the contractor would suffer injury to its reputation if there was public disclosure of the possible problem regarding the bidding; (7) It was unusual for an architectural firm to recommend a bid from other than the low bidder; (8) "[A] potential claim would exist by the low bidder" if the low bidder were not awarded the contract; and (9) There was "increased possibility of success" in the pursuit of a claim by the low bidder if "all facts on which [the architect] based [its] recommendation were not made known to the board . . . [in] a closed session."

After the preliminary meeting between representatives of the school district and the architect, the regular meeting of the board of education was convened. In the course of the regular meeting the architect addressed the board and stated: "I believe we will address the boiler bids with a recommendation which is the first order of our business. We would bring a recommendation to this Board to accept the bid of [the second-lowest bidder]." In response, the president of the school board asked: "Is there a reason why you go with the second low bidder?" The architect answered: "Yes sir, there is, and in order to protect our clients [sic] concern we would request a closed meeting to address these claims." At that point the school attorney expressed: "I would suggest, Mr. Chairman, that this would be appropriate both for the purpose of protecting the persons involved and in the interest of the school district, generally, that this be discussed privately." The school board then affirmatively voted to withdraw to the "closed session for these reasons." The exact contents of the closed session are not shown, but the architect's reasons for rejecting the low bid, as previously summarized, were disclosed to the board in the closed session. After the

closed session and upon reconvening the open session, the board, without further discussion or deliberations about bids on the boiler project, immediately voted to accept the bid of the second-lowest bidder.

There is no indication that any representative of the low-bidding contractor attended the meeting on January 4, 1982. When asked for whose protection the meeting was closed, the president of the board of education responded: "Probably the School Board. I don't know."

Grein sued to nullify the action of the board in awarding the boiler contract to the second-lowest bidder. See § 84-1414. Grein claimed that the closed session of the board was not authorized by § 84-1410. The answer filed by the board alleges that a closed session was necessary for the protection of the public interest or for the prevention of needless injury to the reputation of an individual.

The district court held that the closed session of the board and the contract to the second-lowest bidder were void on account of violation of the "Open Meetings Laws." The district court also enjoined the board from further violations of the Public Meetings Laws and ruled that the plaintiff was entitled to recover an attorney fee, but the record does not disclose any order awarding a specific attorney fee.

The board claims: (1) The closed session did not violate the Nebraska Public Meetings Laws, §§ 84-1408 to 84-1414; (2) The vote of the board, namely, accepting the second-lowest bid during the open meeting immediately after the closed session, was permissible and not contrary to the Public Meetings Laws; and (3) The injunction prohibiting the board's further violation of the Public Meetings Laws was not proper.

A declaration of the intent behind the Public Meetings Laws is found in § 84-1408: "It is hereby declared to be the policy of this state that the forma-

tion of public policy is public business and may not be conducted in secret.

"Every meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies . . . ."

A closed session of a public body is authorized by § 84-1410: "(1) Any public body may hold a closed session by the affirmative vote of a majority of its voting members *if a closed session is clearly necessary for the protection of the public interest or for the prevention of needless injury to the reputation of an individual* and if such individual has not requested a public meeting. . . . (2) The vote to hold a closed session shall be taken in open session. The vote of each member on the question of holding a closed session, the reason for the closed session, and the time when the closed session commenced and concluded shall be recorded in the minutes. . . ." (Emphasis supplied.)

The Nebraska Public Meetings Laws are a statutory commitment to openness in government. As a result of open meetings, there will be development and maintenance of confidence, as well as participation, in our form of government as a democracy. The public can observe and within proper limits participate in discussions and deliberations of a public body. "Deliberation" means the act of weighing or examining reasons for and against a choice or measure, and connotes not only collective discussion but collective acquisition and exchange of facts preliminary to the ultimate decision. Cf., *People ex rel. Hopf v. Barger*, 30 Ill. App. 3d 525, 332 N.E.2d 649 (1975); *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.*, 263 Cal. App. 2d 41, 69 Cal. Rptr. 480 (1968). Government's decision-making process, whether observed personally by the public or publicized by the media, can be examined and analyzed in terms of the effect on the lives of people. In this manner government may be ac-

countable to the governed. Cf., *Hudson v. School Dist. of Kansas City*, 578 S.W.2d 301 (Mo. App. 1979); *Krause v. Reno*, 366 So. 2d 1244 (Fla. App. 1979); *Miglionico v. Birmingham News Co.*, 378 So. 2d 677 (Ala. 1979); *Ridenour v Dearborn Bd of Ed*, 111 Mich. App. 798, 314 N.W.2d 760 (1981).

"The basic argument for open meetings is that public knowledge of the considerations upon which governmental action is based is essential to the democratic process. The people must be able to 'go beyond and behind' the decisions reached and be apprised of the 'pros and cons' involved if they are to make sound judgments on questions of policy and to select their representatives intelligently. The presence of outside observers is an invaluable aid in making such information available, for official reports, even if issued, will seldom furnish a complete summary of the discussion leading to a particular course of action. . . . [T]he benefit of granting access to governmental meetings will inure to a far larger segment of the population, because those who do attend will pass on the information obtained. It is further argued that decisions which result in the expenditure of public funds ought to be made openly so that the people can see how their money is being spent; publicity of expenditures further serves to deter misappropriations, conflicts of interest, and all other forms of official misbehavior. . . . [O]pen meetings foster more accurate reporting of governmental activities. Even when meetings are closed, some hint of what occurs generally reaches [the media]; but such reports are often incomplete and slanted according to the views of the informant. To restrict [the media] to such sources of information is a disservice both to the public, which is misled, and to the officials, who may be judged on the basis of these distorted reports." Note, *Open Meeting Statutes: The Press Fights for the "Right to Know*," 75 Harv. L. Rev. 1199, 1200-01 (1962).

Public meetings laws are broadly interpreted and

liberally construed to obtain the objective of openness in favor of the public. *Rice v. Union Cty. Reg. High School Bd. of Ed.*, 155 N.J. Super. 64, 382 A.2d 386 (1977); *Wexford Prosecutor v Pranger*, 83 Mich. App. 197, 268 N.W.2d 344 (1978); *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968). Provisions permitting closed sessions and exemption from openness of a meeting must be narrowly and strictly construed. *Rice v. Union Cty. Reg. High School Bd. of Ed.*, *supra*; *Ill. News Broadcasters v. City of Springfield*, 22 Ill. App. 3d 226, 317 N.E.2d 288 (1974); *Daily Gazette v. Town Bd., etc.*, 111 Misc. 2d 303, 444 N.Y.S.2d 44 (1981); *Ridenour v Dearborn Bd of Ed*, *supra*.

Although the board's motion to adjourn to a closed session contained the phrase "protecting the persons involved and in the interest of the school district, generally," for our purposes we will assume that the motion had properly utilized the specific statutory language "for protection of the public interest." See § 84-1410.

The "public interest" mentioned in § 84-1410 is that shared by citizens in general and by the community at large concerning pecuniary or legal rights and liabilities. Cf., *Russell, Jr. v. Wheeler*, 165 Colo. 296, 439 P.2d 43 (1968); *Goldberg v. Barger*, 37 Cal. App. 3d 987, 112 Cal. Rptr. 827 (1974).

It is axiomatic that concerns of citizens and taxpayers of a school district include the fiscal policy and cost of operating the district. The district's expenses will ultimately be reflected in taxes borne by the taxpayers. Here, there was a decision to be made: Should the low bid be accepted? Any answer to the question would have an impact on the pocketbooks and wallets of the public. The question and answer did indeed involve the public interest, but protection of that public interest in this case demanded deliberations in a public meeting rather than resolution in the recesses of a closed session. Cf., *Miglionico v. Birmingham News Co.*, 378 So. 2d

677 (Ala. 1979); *Ridenour v Dearborn Bd of Ed*, 111 Mich. App. 798, 314 N.W.2d 760 (1981); *Blackford, etc. v. School Bd. of Orange Cty.*, 375 So. 2d 578 (Fla. App. 1979). The board was not entitled to adjourn to a closed session based upon "protection of the public interest" contemplated by § 84-1410, in view of the circumstances presented in this case.

Going to the second claim for exemption from a public meeting, namely, "prevention of needless injury to the reputation of an individual," § 84-1410, one has to ask: Whose reputation was being protected? The reputation of the architect or of the board? There is no allegation or intimation critical of the integrity, loyalty, reliability, or honesty of the board or its representatives, individually or collectively. The lowest bidder's reputation seems to have become obscured in the shadow of the protective umbrella opened at the meeting. Nothing indicates that the low bid was other than the result of an honest but erroneous computation. Yet, the board elected to adjourn to a closed session where the architect related the honest mistake of the low bidder and expressed some rather suspect, speculative conclusions. Steeped in the secrecy of the closed session, the board reconvened the open meeting and immediately voted to accept the second-lowest bid, thereby rejecting the low bid without any discussion or explanation. Anyone believing that it was more salutary to spare the low bidder embarrassment over an honest mistake ignores that some people often draw the most cruel conclusions from sinister silence. We believe the slight discomfort, if any, experienced by a low bidder in the arena of public lettings is far outweighed by the policy favoring openness in the meetings of a public body. Cf. *Brown v. East Baton Rouge Parish School Bd.*, 405 So. 2d 1148 (La. App. 1981). Prevention of needless injury to an individual's reputation as a basis for a closed session was not established under the cir-

cumstances, and this exemption from an open session was not available to the board.

The board suggests a good faith motivation for a closed session is a cure for noncompliance with the Public Meetings Laws. The Public Meetings Laws contain no such rehabilitative or curative provision. If we were to permit the board's action to stand on the basis of good intention, such a rule would become an invitation, perhaps a license, for a public body to circumvent the Public Meetings Laws' limited exemptions by an additional criterion of good faith or good intention in adjournment to a closed session. We hold that in civil actions good faith or good intention on the part of the public body is irrelevant to the question of compliance with the provisions of the Public Meetings Laws authorizing a closed session. See, *Wolf v. Zoning Bd. of Adjust. of Park Ridge*, 79 N.J. Super. 546, 192 A.2d 305 (1963); *Times Publishing Company v. Williams*, 222 So. 2d 470 (Fla. App. 1969); *Blackford, etc. v. School Bd. of Orange Cty., supra*; *Kramer v. Bd. of Adjust., Sea Girt*, 80 N.J. Super. 454, 194 A.2d 26 (1963). Cf. *Town of Palm Beach v. Gradison*, 296 So. 2d 473 (Fla. 1974). The only question of fidelity involved is adherence to the requirements of the Public Meetings Laws.

The board believes its vote in the reconvened open session immediately after the closed session is valid. The minutes of the meeting reflect the board's vote to reconvene the open session and the immediate transaction of business: "[President of board]: All right, item A boiler bids, is there a motion? [Response]: I move that we accept the bid of [second-lowest bidder] for the boilers. [President]: Is there a second? [Response]: Second. [President]: Any discussion? Call the roll please." At that point there occurred five affirmative votes by which the motion carried. The necessary inference is that the vote during the reconvened open session was the extension, culmination, and product of the

168

closed session. To deny that deduction would not be a tax but a surtax on credibility, and naivete to the *n*th degree.

The prohibition against decisions or formal action in a closed session also proscribes "crystallization of secret decisions to a point just short of ceremonial acceptance," and rubberstamping or reenacting by a *pro forma* vote any decision reached during a closed session. *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.*, 263 Cal. App. 2d 41, 50, 69 Cal. Rptr. 480, 487 (1968). See, *Littleton Educ. Ass'n v. Arapahoe Sch. Dist.*, 191 Colo. 411, 553 P.2d 793 (1976); *Brown v. East Baton Rouge Parish School Bd., supra; Peters v. Bowman Pub. Sch. Dist. No. 1*, 231 N.W.2d 817 (N.D. 1975); *Kramer v. Bd. of Adjust., Sea Girt, supra.* Cf. *Town of Palm Beach v. Gradison, supra.* Consequently, the vote of the board in accepting the second-lowest bid violated the Nebraska Public Meetings Laws and subjected the action to nullification, namely, being declared void by a court as provided in § 84-1414.

We find the judgment of the district court is correct in declaring void the board's accepting the second-lowest bid.

From all this there evolves a guiding principle relatively simple and fundamental: If a public body is uncertain about the type of session to be conducted, open or closed, bear in mind the policy of openness promoted by the Public Meetings Laws and opt for a meeting in the presence of the public.

The injunction ordered by the district court enjoined "further violations of" the Public Meetings Laws. Such injunction cannot stand. An injunction is an extraordinary remedy available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury. See *Wexford Prosecutor v Pranger*, 83 Mich. App. 197, 268 N.W.2d 344 (1978). "[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an in-

junction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged." *Labor Board v. Express Pub. Co.*, 312 U.S. 426, 435-36, 61 S. Ct. 693, 85 L. Ed. 930 (1941). "[T]he threatened action must be based upon a real apprehension that the acts for which the injunction are [sic] sought are not only threatened but will in all probability be committed. Unless it can be shown that reasonable grounds exist for apprehending that absent the injunction the actions will be done, the injunction will be denied." *Hudson v. School Dist. of Kansas City*, 578 S.W.2d 301, 312 (Mo. App. 1979). The facts of this case do not warrant the extraordinary remedy of injunctive relief. Therefore, the judgment of the district court granting the injunction is reversed, and the district court is directed to dissolve the injunction entered in the proceedings.

The matter of the attorney fee for proceedings in district court is apparently still pending before the trial court. Therefore, we make no ruling in view of the absence of a final order in the district court. For services in this court Grein is awarded an attorney fee of $500, which is taxed to the appellants as a part of the costs of the proceedings on appeal.

For the reasons given the judgment of the district court regarding the board's action in accepting the second-lowest bid is affirmed, but the order of the district court entering the injunction is reversed with directions as indicated herein.

AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS.