KENNETH JOHNSON, APPELLANT, V. NEBRASKA ENVIRONMENTAL
CONTROL COUNCIL AND NEBRASKA DEPARTMENT OF
ENVIRONMENTAL CONTROL, APPELLEES, AND WASTE-TECH
SERVICES, INC., INTERVENOR-APPELLEE.

509 N.W.2d 21

Filed November 30, 1993.    No. A-91-1174.

Patricia A. Knapp, of Bailey, Polsky, Cope, Wood & Knapp, for appellant.

Don Stenberg, Attorney General, and Linda L. Willard for appellees.

Mark A. Christensen, of Cline, Williams, Wright, Johnson & Oldfather; Marcus L. Squarrell and Robert F. Copple, of Parcel, Mauro, Hultin & Spaanstra, P.C.; and Ruth Brammer Johnson for intervenor-appellee.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

HANNON, Judge.

The plaintiff, Kenneth Johnson, brought this declaratory judgment action against the Nebraska Environmental Control Council (Council) under Neb. Rev. Stat. § 84-911 (Reissue 1987) to challenge the validity of an amendment to the Council's rules and regulations, which amendment was promulgated by the Council. The challenged amendment was adopted after the intervenor, Waste-Tech Services, Inc. (Waste-Tech), petitioned the Council for a rule change which would exclude waste produced by Waste-Tech's incinerator in Kimball, Nebraska, from the Council's list of hazardous wastes, which are set forth under title 128 of the Nebraska Administrative Code. The Nebraska Department of Environmental Control (Department) was made a party defendant after the court sustained a demurrer. The district court granted the separate motions for summary judgment filed by the defendants and the intervenor

and dismissed the plaintiff's action. The plaintiff appeals to this court and assigns both procedural and substantive errors. We reverse the judgment and remand the cause for further proceedings because the Council did not follow the required procedures, and therefore, we do not reach the substantive issues.

## BACKGROUND INFORMATION

A summary of the statutory basis for the Department's and the Council's authority, as well as a summary of the pertinent rules and regulations, will help clarify the issues of this case. The Nebraska Environmental Protection Act (NEPA), Neb. Rev. Stat. §§ 81-1501 to 81-1533 (Reissue 1987 & Cum. Supp. 1992), was adopted in 1971. This act was adopted at the behest of the U.S. government, and it provides that regulations adopted by the Council "shall in all respects comply with the Environmental Protection Act and the Resource Conservation and Recovery Act, as amended, 42 U.S.C. 6901 et seq." See § 81-1505(13)(a).

Section 81-1505 (Reissue 1987), which is applicable to the case at hand, provides in significant part: "(1) In order to carry out the purposes of the Environmental Protection Act, the council shall adopt rules and regulations which shall set standards of air, water, and land quality . . . ." This lengthy statute then sets forth the matters the Council shall consider in adopting rules and regulations regarding water quality standards, various pollutants, mineral explorations, livestock waste, hazardous waste, and several other common sources of pollution. Pursuant to this statutory authority, the Council adopted title 128 of the Nebraska Administrative Code, which contains substantive rules governing pollution, including a listing of what shall be considered hazardous waste, and title 115 of the Nebraska Administrative Code, which provides the procedural rules under which the Council and the Department operate. Title 115 was amended by the Department in August 1993; however, the version of the rules applicable to the case at hand is the title 115 rules which went into effect in December 1985 and July 1987.

The controlling issue in this appeal is whether the Council

followed the applicable statutes and regulations when it adopted an amendment to 128 Neb. Admin. Code, ch. 15 (1989), which authorized Waste-Tech to build the incinerator.

## PLAINTIFF'S SECOND AMENDED PETITION

The trial court sustained a demurrer to the plaintiff's amended petition on the ground that the Department was a necessary party. The plaintiff filed a second amended petition and made the Department a party.

In his second amended petition, Johnson, who lives near Kimball, specifically alleged the date and place of each of the Council's meetings at which the amendment to title 128, chapter 15, which authorized Waste-Tech to build the incinerator was considered, as well as the date and place of each of the several hearings at which anything relating to the amendment was considered. Johnson also set forth the date and type of notice given for the meetings and hearings and the action taken. This information will be set forth below when the evidence on the proceeding is summarized and discussed.

In his first cause of action, Johnson alleged in his second amended petition that the adopted amendment, which excluded Waste-Tech's waste from the list of hazardous waste, violates the U.S. Constitution and the Constitution of Nebraska in the following respects: (1) The Council's exclusion of waste generated by Waste-Tech is arbitrary and capricious; (2) the amendment grants Waste-Tech exclusive privileges or immunities, in violation of article III, § 18, of the Constitution of Nebraska; (3) the amendment violates the Due Process Clause; and (4) the Council has no adequate mechanism for separating the legislative, executive, and judicial powers delegated to it by the Legislature.

Johnson also alleged that the Council had exceeded its statutory authority under NEPA and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq. (1988). He further alleged that the Council does not have the authority to define hazardous waste as nonhazardous and does not have the authority to exclude from regulation waste emitted from a particular facility. Johnson also alleged that the Council did not comply with the statutory requirements or the

Council's own rules, as the Council did not conduct its hearings in the area to be affected by the proposed change in the standards and did not give proper notice to the area to be affected.

In his second cause of action, Johnson alleged that on February 16 and May 17, 1989, the Council met with Waste-Tech in nonadvertised meetings. He asserted that the public was not allowed to attend these meetings and that no minutes were kept of these meetings. The plaintiff contended that these actions violated Nebraska public meeting law, Neb. Rev. Stat. § 84-1401 et seq. (Reissue 1987), which is applicable to the case at hand, particularly § 84-1413.

The transcript does not show whether the defendants filed an answer to the plaintiff's second amended petition. The court granted the defendants' and intervenor's separate motions for summary judgment and dismissed the plaintiff's second amended petition.

## ASSIGNMENTS OF ERROR

Johnson alleges that the court erred (1) in sustaining the Council's demurrer to his amended petition on the basis that the Department had not been joined in the action as a necessary party and (2) in granting the motions for summary judgment, because the record discloses that there are genuine issues of material fact. In connection with the second assignment of error, Johnson argues that he is entitled to a declaratory judgment and that, therefore, the trial court erred in granting the motions for summary judgment and dismissing his second amended petition. Johnson asserts that (1) the amendment was arbitrary because the Council acted on insufficient information when it adopted the amendment; (2) the amendment exceeds the Council's statutory authority because the amendment does not comply with the federal RCRA; (3) "delisting" the Waste-Tech facility is a grant of a special privilege to Waste-Tech in violation of article III, § 18, of the Constitution of Nebraska; (4) the amendment exceeds the Council's statutory authority because the power to delist waste is distinct from the power to list waste; (5) the Council did not conduct a hearing in the area affected, as required by statute, and did not give notice,

as required by statute and the Council's own regulations; and (6) the Council's February 16, 1989, meeting violated Nebraska public meeting law. Our decision is based upon the fifth and sixth assertions, which raise procedural questions, and we find that discussion of the other issues would not be helpful.

## DEMURRER

We shall begin by considering the first error assigned by the plaintiff, that of the court's granting a demurrer on the ground that the Department was a necessary party. Upon granting the demurrer, the court allowed Johnson to modify his amended petition to make the Department a party defendant. " 'When a demurrer is sustained, and the pleader desires to amend, it has been held that he thereby waives his exception to the ruling of the court.' " *Papillion Times Printing Co. v. Sarpy County*, 85 Neb. 397, 400, 123 N.W. 452, 453 (1909). As the plaintiff has modified his amended petition upon demurrer, as opposed to standing on his amended petition and appealing the demurrer, he has waived his objection to the court's grant of a demurrer regarding the joinder of parties. See *id*. Therefore, we cannot review this issue.

## STANDARD OF REVIEW

All of the other issues in this appeal arise under the question of whether the court should have granted the defendants' and intervenor's separate motions for summary judgment. In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992); *Purbaugh v. Jurgensmeier*, 240 Neb. 679, 483 N.W.2d 757 (1992); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Abboud v. Michals*, 241 Neb. 747, 491 N.W.2d

34 (1992); *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992); *Bowley v. Village of Bennington*, 241 Neb. 329, 488 N.W.2d 354 (1992). In the context of this case, the above-stated rule has the effect of requiring this court to reverse the judgment of the district court and remand the cause unless the record shows as a matter of law that the plaintiff is entitled to no relief.

## THE EVIDENCE

At the hearing on the motions for summary judgment, the parties stipulated that Johnson had attended a January 12, 1989, hearing held in Kimball. The affidavit of Eliot Cooper, a vice president for Waste-Tech, was received in evidence. In this affidavit, Cooper stated that no representative of Waste-Tech had attended the Council's February 16 informational meeting. Cooper also stated that Waste-Tech had supplied the Council and the Department with all of the information required by the applicable rules and regulations as well as all additional information requested by the Council and the Department.

The affidavit of Dennis Grams, the director of the Department, was received. Grams' affidavit established the foundation for the introduction into evidence of the minutes from the various Council meetings at which the amendment was considered and the notice given for each of these meetings. This information will be summarized later in this opinion when it is relevant to the issue under consideration.

## ANALYSIS

### GENERAL DISCUSSION

This case is an appeal from a declaratory judgment action under § 84-911. In summary, that statute allows the district court to declare a rule or regulation invalid if the court finds that the rule or regulation (1) violates constitutional provisions, (2) exceeds the statutory authority of the agency, or (3) was adopted without compliance with the statutory rulemaking or regulation-making procedures. This procedure should be distinguished from the procedure outlined in Neb. Rev. Stat. §§ 84-917 and 84-918 (Cum. Supp. 1992), which provides for judicial review of contested cases by appeal.

The plaintiff raises the issues of whether the amendment, once adopted by the Council, was the result of arbitrary and capricious action on the part of the Council, was based on insufficient information, was special legislation, and did not comply with the federal RCRA. As we decide below that the amendment adopted appears void, on the record, because it was adopted without compliance with the statutory rulemaking procedures in that sufficient notice was not given and proper hearings were not held, there is no need to address the substantive arguments against the Council's decision.

## NONCOMPLIANCE WITH STATUTORY RULEMAKING AND REGULATION-MAKING PROCEDURES

Title 128 of the Nebraska Administrative Code contains the rules and regulations governing hazardous waste management. Under chapter 15 of title 128, there is a list of identified hazardous wastes. This chapter is some 16 pages long, and the list, much of which is in fine print with 2 columns on each page, constitutes most of the chapter. The list is technical and is obviously not intended to be understood by the general public. Hazardous waste can be excluded from the list upon the petition of a generator of such waste. 128 Neb. Admin. Code, ch. 8, § 002.01 (1989). Title 128, chapter 8, § 002.05, states that the proceedings are to be conducted as rulemaking under title 115, chapters 80, 81, and 82.

The plaintiff argues that the method used by the Council to promulgate the amendment excluding waste to be produced by the Waste-Tech incinerator from the list of hazardous wastes found in title 128 did not comply with the statutory rulemaking and regulation-making procedures and that, therefore, the amendment is invalid under § 84-911. To decide whether there is no genuine issue of material fact regarding the promulgation of the amendment in question, we must examine the applicable statutory rulemaking procedures.

Under § 81-1505(1), the Council is authorized to adopt rules and regulations which set the standards of air, water, and land quality. Under § 81-1505(17), prior to adopting, amending, or repealing standards and classifications of air, water, and land quality, the Council is required to conduct public hearings in the

general area to be affected by the standard. Notice of the public hearing must be published twice, and the first publication must occur not more than 30 days nor less than 20 days before the public hearing. § 81-1505 (17)(a).

All state boards, commissions, departments, and administrative offices authorized to make rules and regulations are subject to the Administrative Procedure Act (APA), Neb. Rev. Stat. § 84-901 et seq. (Reissue 1987 & Cum. Supp. 1992). The provisions of APA in effect at the time the amendment was adopted were "intended to constitute an independent act establishing minimum administrative procedure for all agencies," § 84-916, and were to "be considered as cumulative to existing laws," § 84-919. Under APA, no rule or regulation shall be adopted except after public hearing on the question of adoption, and notice of the public hearing must be given at least 30 days prior by publication in a newspaper having general circulation in the state. § 84-907. Read together, NEPA and APA require that notice of a public hearing must first be published in a newspaper of general circulation, which also has regular circulation in the area to be affected, on the 30th day prior to the public hearing by the Council on a rule regarding air, water, or land quality standards and must then be published again in a newspaper which has regular circulation in the area to be affected.

According to the Council's own rules and regulations, any interested person may petition the Council to promulgate a standard, rule, or regulation. 115 Neb. Admin. Code, ch. 80, § 001. The Council then has the option of denying the petition or instituting rulemaking proceedings. *Id.* at § 004. The rules governing the Council require that a public hearing be held before the adoption of standards for air, water, or land quality and that the hearing be held in the area to be affected by the standards. 115 Neb. Admin. Code, ch. 83, § 003. Notice of the hearing is to be published at least twice in a newspaper regularly circulated in the area to which the proposed standards apply. *Id.* at § 003.02. The first date of publication must be not more than 30 days nor less than 20 days before the hearing. *Id.* at 003.03.

Under title 128, chapter 8, § 002.01, any person may petition for a regulatory amendment excluding waste at a particular

generating facility from the hazardous waste list. Title 128, chapter 8, § 002.05, states that the petitioning process is to operate in accordance with title 115, chapters 80, 81, and 82. As title 115, chapter 80, requires the Council to use the general rulemaking procedures if it does not deny the petition, the rest of the rulemaking procedures found in title 115 apply to the promulgation of a rule excluding waste under title 128.

The plaintiff alleges that the Council did not hold a public hearing in the area affected by the amendment and did not give adequate notice of its public hearings and that, therefore, the amendment was not promulgated according to the statutory rulemaking procedures. The evidence in the record reveals the following: In his affidavit, Grams, director of the Department, attested that the Council had held an informal public hearing on Waste-Tech's petition for a rule change in Lincoln, Nebraska, on September 23, 1988. Public notice of the hearing was published on August 24 and September 2 in the Lincoln Journal-Star, Grand Island Daily Independent, Scottsbluff Star-Herald, Norfolk Daily News, and North Platte Telegraph.

Grams attested that on January 12, 1989, the Department held a public hearing in Kimball on the Waste-Tech petition. Public notice of the hearing was published once in the Scottsbluff Star-Herald, Sidney Telegraph, and Western Nebraska Observer on December 13, 14, and 15, 1988, respectively. The plaintiff attended the January 12 public hearing. Grams attested that a transcript of this hearing was prepared and provided to the Council at a later date. The minutes of a public hearing by the Council on February 17, 1989, reflect that "[a] public hearing was held in Kimball, Nebraska on January 12, 1989 to obtain public comment on the proposed rule change. A copy of the transcript from this meeting was offered as exhibit 3." No copy of the transcript was attached to the minutes of the meeting submitted into evidence, nor is there evidence of any minutes from the January 12 hearing.

Grams' affidavit contains conflicting evidence regarding a meeting held by the Council on February 16, 1989. On the one hand, Grams attests in one paragraph that "[o]n February 16, 1989, the Department held a public informational meeting in

Lincoln, Nebraska." Grams attests that a press release was sent on February 10 to more than 200 interested persons on the Department's mailing list and that a copy of such press release is attached to the affidavit. There is no copy of such press release in the evidence. On the other hand, Grams states in another paragraph that the February 16 meeting "was an informational session where the Council heard reports from the staff of the Department. No minutes were recorded from this meeting because no action was contemplated or taken."

Grams attests that on February 17 the Council held a formal hearing on the Waste-Tech petition in Lincoln. Notice of the hearing was published on January 18 and 28 in the Lincoln Journal-Star, Scottsbluff Star-Herald, Grand Island Daily Independent, Norfolk Daily News, and North Platte Telegraph. In addition, a two-way audio hookup was provided between the hearing in Lincoln and a hall in Kimball.

Finally, Grams attests that on May 18, 1989, the Council held a public hearing on the Waste-Tech petition in Omaha, Nebraska. Notice of the public hearing was published on April 18 and 28 in the Lincoln Journal-Star, Grand Island Daily Independent, Scottsbluff Star-Herald, Norfolk Daily News, and North Platte Telegraph. Notice of the hearing was also published on April 20 and 27 in the Western Nebraska Observer. Again, a two-way audio hookup was provided between the hearing in Omaha and a hall in Kimball.

The Council argues in its brief that the January 12, 1989, hearing held in Kimball sufficed as a public hearing held in the area to be affected by the proposed amendment, because the hearing was called by the Council and was presided at by a Department employee acting as a hearing officer. There is no evidence in the record, however, of who presided at or attended the hearing on January 12 beyond Grams' attestation that the Department held the hearing.

In contrast, Waste-Tech does not make the same argument as the Council. Waste-Tech's argument is an attempt to have its cake and eat it too. On the one hand, Waste-Tech argues that the Council is empowered under the general statutory provisions of § 81-1505 to delist waste because the rules and regulations set the standards for waste by defining

what amount is permissible in air, water, and land (using the criteria listed in § 81-1505 (13)). On the other hand, Waste-Tech argues that the provisions of § 81-1505, which require that a hearing be held in the area to be affected, do not apply to a delisting, as delisting a waste is not setting a standard. In order to be valid, a rule or regulation must be consistent with the statute under which the rule or regulation is promulgated. *State ex rel. Spire v. Stodola*, 228 Neb. 107, 421 N.W.2d 436 (1988); *County of Dodge v. Department of Health*, 218 Neb. 346, 355 N.W.2d 775 (1984). Procedural rules are binding upon the agency which enacts them, and the agency does not have the discretion to waive, suspend, or disregard in a particular case a validly adopted rule. *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 284 N.W.2d 10 (1979). We find that in establishing a standard, the Council must abide by the applicable statutory provisions as well as the Council's own procedural requirements for promulgating a standard under § 81-1505.

■ There is no evidence in the record regarding who conducted the January 12, 1989, meeting for the Council. If, as the Council alleges in its brief, the January 12 hearing was conducted only by a Department employee, then the delisting may be subject to invalidation. Section 81-1503(7) states that the Council shall adopt standards, rules, and regulations and that "[a] majority of the members of the council shall constitute a quorum for the transaction of business." There is no Nebraska law regarding what the term "transaction of business" means. However, other states' courts have found that a statutorily required public hearing is the transaction of business, for which a quorum is necessary. See, *Croaff v. Evans*, 130 Ariz. 353, 636 P.2d 131 (Ariz. App. 1981); *Vaughan v. Duke*, 232 Ga. 545, 207 S.E.2d 509 (1974); *City of Passaic v. Passaic County Bd. of Taxation*, 18 N.J. 371, 113 A.2d 753 (1955); *Clark v. Montgomery County*, 235 Md. 320, 201 A.2d 499 (1964). The newly created title 115 rules, promulgated in August 1993, make it even more clear that a hearing officer's role is simply to preside at the hearing but that the Council is expected to attend the hearing, as the rules provide that "[b]efore each hearing is closed, the hearing officer may allow

the Council to ask questions of any witness." 115 Neb. Admin. Code, ch. 10, § 010. We find that there is a genuine issue of material fact regarding whether the January 12 hearing satisfied the statutory requirement that the Council hold a hearing in the area which would be affected by the amendment.

In addition, there appears to be a genuine issue of material fact regarding the adequacy of the published notice. Under § 81-1505(17), the Council is required to publish notice of a public hearing twice in a newspaper regularly published or circulated in the county or counties affected by the proposed standards. The first date of publication shall not be more than 30 days before the hearing. Under APA, notice is to be published at least 30 days prior to the hearing. Publication was had once in the Scottsbluff Star-Herald, 30 days before the hearing; once in the Sidney Telegraph, 29 days before the hearing; and once in the Western Nebraska Observer, 28 days before the hearing. These publications do not fulfill the statutory requirements and the Council's rules regarding publication, which require that publication be had twice.

Waste-Tech argues that as Johnson stipulated before the district court that he had attended the January 12, 1989, hearing, he has waived any objection to the form of notice. Waste-Tech cites *Witt v. School District No. 70*, 202 Neb. 63, 273 N.W.2d 669 (1979); *Alexander v. School Dist. No. 17*, 197 Neb. 251, 248 N.W.2d 335 (1976); and *County of Blaine v. State Board of Equalization & Assessment*, 180 Neb. 471, 143 N.W.2d 880 (1966), in support of this argument. However, an examination of these cases shows that they were contested cases and that they, therefore, involved adjudicative hearings in which the person who waived notice was the interested party. As stated above, the rules that apply to adjudicative hearings are different from those that apply to quasi-legislative hearings. The provision of title 115, chapter 25, which states that a party waives any notice requirement by participating in a hearing applies only to contested proceedings. As presented to this court, the proceeding before the Council was not a contested proceeding. Therefore, there are genuine issues of material fact regarding the adequacy of notice of the January 12, 1989, hearing.

The next issue we must address is whether, in light of the apparent inadequacy of the hearing held in Kimball, the hearings in Lincoln and Omaha satisfied the statutory and rulemaking requirements. The record does not show that Lincoln and Omaha are in the area to be affected by the incinerator. However, we are not sufficiently certain that judicial notice can be taken of this fact, and there is no proof in the record which would establish exactly what "the area to be affected" is, particularly to the degree of certainty necessary for a summary judgment.

Therefore, there appears to be a genuine issue of material fact regarding the adequacy of the Lincoln and Omaha hearings to fulfill the requirement that a hearing be held in the area to be affected by the standard. The issue thus becomes whether a rule is invalid on the basis that the hearings held by the agency did not comply with the statutory requirements or the agency's own rules.

■ "Rule making is a legislative process as contrasted with an administrative, judicial, or quasi-judicial process . . . ." 73 C.J.S. *Public Administrative Law and Procedure* § 87 at 576 (1983). We believe that the propriety of the procedure must be judged by the rules and cases dealing with rulemaking, rather than contested cases or adjudicatory matters. "[I]n the absence of a statutory requirement a hearing before the administrative body is not necessarily a sine qua non to the validity of rules and regulations . . . ." 73 C.J.S., *supra*, § 106 at 646.

In *Nickel v. School Board of Axtell*, 157 Neb. 813, 61 N.W.2d 566 (1953), the Nebraska Supreme Court considered a school redistricting statute which allowed school reorganization committees to change school district boundaries. The court held that the delegation of power to change school district boundaries was a delegation of a legislative power and stated that "[u]nder the situation here the duties of the county committee do not fall within the category to which the due process clause of either the state Constitution or the federal Constitution has application." *Id.* at 826, 61 N.W.2d at 574. In the case at hand, the challenged action is the Council's amendment of regulations. As such, notice is not required under the Constitution, but nonetheless, the Legislature has

seen fit to require notice under the statutes governing the Council.

We are then interested only in the effect of the Council's failure to hold a hearing in accordance with the state statutes and the Council's own rules. We have been unable to find any case where the Nebraska Supreme Court directly ruled upon the effect of an agency's failure to follow statutory directions concerning notice of a hearing when the administrative body acted quasi-legislatively. In *Syfie v. Tri-County Hospital Dist.*, 186 Neb. 478, 184 N.W.2d 398 (1971), the Nebraska Supreme Court concluded that the notice given was in compliance with the pertinent statute in a case held to involve a purely legislative function. Presumably, the court must have thought that a failure to give notice would have affected the validity of the proceedings, even though the court concluded that the required notice was given.

Failure to follow statutes which prescribe notice for a hearing before an agency that is exercising quasi-legislative powers, that is, conducting proceedings to find some fact in the course of exercising legislative powers, has resulted in that action being held ineffective. See *School Dist. No. 8 v. State Board of Education*, 176 Neb. 722, 127 N.W.2d 458 (1964). That case is not strictly applicable to the present case because it involved a situation where notice was constitutionally and statutorily required. However, the reasons given in that case apply equally to all cases where the required notice was not given before the exercise of legislative powers, such as those where quasi-legislative powers are to be exercised.

The delegation of authority and power does not ordinarily imply a parting with the powers of the Legislature, but points rather to the conferring of authority or power to do the things which otherwise the Legislature would have to do itself. The Legislature may therefore provide the conditions and limitations with which the agency must comply before the authority or power may be exercised.

*Id.* at 733, 127 N.W.2d at 464. "It is the province of the Legislature to determine the manner in which delegated powers shall be exercised and a failure to comply with the conditions

and limitations imposed is an unlawful exercise of the powers purportedly granted." *Id*. at 732, 127 N.W.2d at 464.

> If notice and hearing are afforded as required by law or constitutional right, the power to act exists; if notice and hearing in such a case are not afforded, the power to act does not exist and the courts are available to redress against the unlawful exercise of power . . . .
>
> . . . .
>
> . . . Compliance with the mandate of the Legislature in the delegation of power and authority to an agency of government is in effect a condition precedent to the exercise of such power and authority.
>
> . . . .
>
> . . . "If a statute lays down general standards, the administrative agency may implement the statute by filling in the necessary details. But where, as in the case here, the statute in itself prescribes the exact procedure the administrative agency may not add to or subtract from such a provision." . . .
>
> . . . The authority of the state board and the commissioner to afford notice and hearing is not valid when it fails to comply with the conditions and limitations òf the statute.

*Id*. at 731-34, 127 N.W.2d at 464-65.

In the case at hand, § 81-1505(17) prescribed the place of the hearing and the notice requirements. Title 115, chapter 83, contains the same directions. The Nebraska Supreme Court has stated that "[g]enerally, rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the Legislature. Likewise, procedural rules are binding upon the agency which enacts them." *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 572, 284 N.W.2d 10, 11 (1979). We conclude that there was a genuine issue of material fact as to whether the Council followed the applicable rulemaking procedures and that, therefore, there was a genuine issue of material fact as to whether the promulgated amendment is valid.

## Violation of Nebraska Public Meeting Law

The plaintiff alleges that on February 16, 1989, the Council met for a briefing and that no public notice of the meeting was given and no minutes were kept. The evidence available on this issue is the affidavit of Grams, in which he makes conflicting statements regarding the events of February 16. He attests first that

> [o]n February 16, 1989, the Department held a public informational meeting in Lincoln, Nebraska, referenced in the Second Amended Petition, ¶ 12. Prior to that meeting, a press release providing public notice of the meeting was issued on February 10, 1989 and mailed to more than 200 interested persons on the Department's mailing list. A true and correct copy of the press release is attached to this Affidavit as Exhibit D.

In the record, exhibit D announces a quarterly meeting to be held by the Council on *February 17, 1989*. There is no evidence in the record to reflect that the public was notified of the February 16 meeting. However, Grams goes on to attest that

> [m]inutes were recorded for each of the hearings and meetings by the Council or the Department referenced above, with the exception of the January 12, 1989 public hearing which was transcribed and the February 16, 1989 meeting. The February 16 meeting, referenced in the Second Amended Petition, ¶ 12, was an informational session where the Council heard reports from the staff of the Department. No minutes were recorded from this meeting because no action was contemplated or taken.

Nebraska public meeting law requires that "[e]very meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies." § 84-1408. The purpose behind the open meeting law is that it is "the policy of this state that the formation of public policy is public business and may not be conducted in secret." *Id*. The public meeting law applies to governing bodies of all agencies of the executive branch and, therefore, applies to the Council. § 84-1409. A meeting, under § 84-1409, is defined as "all regular, special, or called meetings, formal or informal, of any public body for the purposes of

briefing, discussion of public business, formation of tentative policy, or the taking of any action of the public body." The public body is required to "give reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body and recorded in its minutes." § 84-1411. Finally, the public body is required to "keep minutes of all meetings showing the time, place, members present and absent, and the substance of all matters discussed." § 84-1413. The Nebraska Supreme Court has held that

[t]he Nebraska Public Meetings Laws are a statutory commitment to openness in government. As a result of open meetings, there will be development and maintenance of confidence, as well as participation, in our form of government as a democracy. The public can observe and within proper limits participate in discussions and deliberations of a public body. "Deliberation" means the act of weighing or examining reasons for and against a choice or measure, and connotes not only collective discussion but collective acquisition and exchange of facts preliminary to the ultimate decision. . . .

". . . The people must be able to 'go beyond and behind' the decisions reached and be apprised of the 'pros and cons' involved if they are to make sound judgments on questions of policy and to select their representatives intelligently. The presence of outside observers is an invaluable aid in making such information available, for official reports, even if issued, will seldom furnish a complete summary of the discussion leading to a particular course of action. . . ."

*Grein v. Board of Education*, 216 Neb. 158, 163-64, 343 N.W.2d 718, 722 (1984) (quoting Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"*, 75 Harv. L. Rev. 1199 (1962)).

The public meeting law is to be broadly interpreted and liberally construed to obtain the goal of openness in favor of the public. *Grein v. Board of Education, supra.* "Listening and exposing itself to facts, arguments and statements constitutes a crucial part of a governmental body's decisionmaking." *St. ex rel. Badke v. Greendale Village Bd.,*

173 Wis. 2d 553, 572, 494 N.W.2d 408, 415 (1993). Whether the Department held "a public informational meeting," as Grams states in one breath, or whether it held "an informational session where the Council heard reports from the staff of the Department," as Grams states in another breath, the fact that the Council may have received information triggers coverage under the public meeting law. The public meeting law applies to meetings at which briefings or formation of tentative policy takes place. The law's application is not limited to meetings at which action is contemplated or taken. " 'The likelihood that the public . . . may never be exposed to the actual controlling rationale of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision could be *influenced* dictates that compliance with the law be met.' " *Id.* at 573, 494 N.W.2d at 415. In addition, the law requires that minutes be taken of all meetings, not just those at which action is contemplated. § 84-1413. We find that informational sessions in which the Council hears reports are briefings and, therefore, are meetings covered under the statute. Grams attests that no minutes were taken at the February 16, 1989, meeting. Further, we find no evidence that the public received reasonable advance notice of the meeting on February 16. Action taken in violation of Nebraska public meeting law is subject to nullification by a district court under § 84-1414. *Leibbrandt v. Lomax*, 228 Neb. 552, 423 N.W.2d 453 (1988). "The prohibition against decisions or formal action in a closed session also proscribes 'crystallization of secret decisions to a point just short of ceremonial acceptance,' and rubberstamping or reenacting by a pro forma vote any decision reached during a closed session." *Grein v. Board of Education*, 216 Neb. at 168, 343 N.W.2d at 724 (quoting *Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs.*, 263 Cal. App. 2d 41, 69 Cal. Rptr. 480 (1968)). We find that there is a genuine issue of material fact as to whether the meeting of the Council on February 16 violated the public meeting law.

## CONCLUSION
We therefore conclude that the record shows there are

genuine issues of material fact as to whether the amendment was adopted in compliance with the statutory rulemaking and regulation-making procedures as well as Nebraska public meeting law. The record specifically fails to show that the applicable notice and hearing provisions were followed. The trial court erred in granting the motions for summary judgment.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.