646 N.W.2d 650 (2002)
264 Neb. 298
In re PROPOSED AMENDMENT TO TITLE 291, CHAPTER 3, OF the MOTOR CARRIER RULES AND REGULATIONS.
Nebraska Public Service Commission, Appellee,
v.
A-1 Ambassador Limousine, Inc., doing business as Ambassador Limousine and Haymarket Limousine, interested party, Appellant, and
R & F Hobbies, Inc., doing business as Prince of the Road, interested party, Appellee.
No. S-01-433.
Supreme Court of Nebraska.
July 12, 2002.
*653 Elaine A. Waggoner, of Waggoner Law Office, Lincoln, for appellant.
Don Stenberg, Attorney General, and L. Jay Bartel, Lincoln, for appellee Nebraska Public Service Commission.
John M. Boehm, of Butler, Galter, O'Brien & Boehm, Lincoln, for appellee R & F Hobbies, Inc.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
A-1 Ambassador Limousine, Inc., doing business as Ambassador Limousine and Haymarket Limousine (A-1), appeals an April 3, 2001, order of the Nebraska Public Service Commission (PSC) which, inter alia, defined the terms "limousine" and "limousine service" as contained in title 291, chapter 3, of the Motor Carrier Rules and Regulations, § 001. We affirm the order of the PSC.

STATEMENT OF FACTS
On January 9, 2001, the PSC, on its own motion, entered an order opening a docket "to conduct a review of existing Commission rules and regulations as they pertain to motor carriers in Title 291, Chapter 3, Motor Carrier Rules and Regulations." The PSC stated in the order that it found it necessary to address the definitions of "limousine" and "limousine service" because of "current ambiguity in the application of our existing granted authorities." The PSC noted that when the applicable rules were originally promulgated, limousines were presumed to be luxury class transportation used primarily for formal social functions. However, a need to define terms had arisen because (1) "holders of limousine authority have engaged a variety of vehicles to conduct their business under the granted authority including the use of regular sedans and vans" and (2) "the passengers being transported no longer are limited to persons seeking the benefits of luxury transportation." The PSC specifically noted that holders of and applicants for limousine authority were using or seeking to use limousine authority to transport clients of the Nebraska Department of Health and Human Services (DHHS).
The PSC noted in the January 9, 2001, order that it had adopted in its rules a limousine classification and had promulgated rules applicable to limousine operators. The PSC stated that it found it necessary to adopt concise definitions of "limousine" and "limousine service" in order to properly interpret the scope of authority granted *654 to limousine certificate holders. The PSC therefore adopted the following definitions:

Definition of "limousine": Limousine shall mean a luxury vehicle used to provide prearranged passenger transportation on a dedicated basis at a premium fare that has a seating of at least five and no more than fourteen persons behind the driver with a physical partition separating the driver seat from the passenger compartment. Limousine does not include taxicabs, sport utility vehicle[s], vans, hotel or airport buses or shuttles, or buses. The term limousine does include transportation within the scope of authorities granted for "luxury limousines", "luxury limousine services", "luxury automobiles", "luxury or stretch limousines", "luxury sedan limousines", and "luxury type vehicles."

Definition of "limousine service": Limousine service shall mean the business of carrying passengers for hire by limousines providing service along a route under the control of the person who hired the vehicle and not over a defined regular route. Limousine service shall not be provided on a demand response basis.

Definition of "premium fare": Premium fare means a rate based on hourly rental of not less than one (1) hour at fifty dollars ($50.00) per hour with a minimum rental time of one hour. A mileage charge may be assessed for transportation of the vehicle for the time before and after the transportation service is provided and only in addition to the minimum hourly charge as provided by this definition.
The PSC specified that to the extent such definitions were in conflict with its findings in a September 8, 1999, order regarding the application of Running Horse Enterprises, LLC, for limousine authority (the Running Horse order), such findings in the Running Horse order were set aside and modified. In the Running Horse order, the PSC had stated that "limousine service shall mean a chauffeurdriven, non-metered passenger vehicle for hire including, but not limited to, full-sized sedans, extended-size sedans, passenger vans, and sports utility vehicles where the rate may be determined on an hourly, daily, weekly, or monthly rental or may be mileage-based."
The PSC also stated that the definitions in the January 9, 2001, order would become effective upon entry of the order and would be applied to all applications for limousine authority granted on or after that date. The PSC acknowledged that certain certificate holders with limousine authority, relying on the Running Horse order, would be operating outside the definition of the limousine authority in the January 9 order. The PSC stated that for those certificate holders, it would stay enforcement of the January 9 order for a period of 90 days in order to allow a reasonable time for those certificate holders to comply with the definitions adopted in the order.
The PSC further indicated that the definitions in the January 9, 2001, order would become part of its overall effort to review, update, and recodify its existing rules on motor carriers. The PSC therefore gave notice that once approval to proceed was received from the Governor, it would propose amendments to title 291, chapter 3, to incorporate the definitions of "limousine," "limousine service," and "premium fare" set forth in the January 9 order. The PSC stated it would accept filed comments on the proposed amendments through February 2 and would set a public hearing on the proposed amendments once permission was received from the Governor to proceed with rulemaking. The PSC reiterated that the proposed amendments were part of its *655 intended efforts to examine the entirety of the motor carrier rules and stated that when a final order adopting revisions to the rules was entered, it would include any revisions to the proposed amendments that were made as the result of public comments received.
The PSC concluded the January 9, 2001, order by ordering (1) that the definitions in the order were thereby adopted as proper policy interpretations of its motor carrier rules pursuant to its authority under state law, (2) that the definitions should not be enforced against holders of certificates granted prior to the order for a period of 90 days, and (3) that the proposed amendments to the motor carrier rules were open to public comment and interested parties could file initial comments on or before February 2.
On March 14, 2001, the PSC held a public hearing on the proposed amendments to the motor carrier rules and regulations. At the hearing, the PSC received into evidence written public comments which had been received from various interested parties, including holders of limousine certificates, holders of taxicab certificates, and DHHS. DHHS expressed concern that the proposed amendments would prohibit certain holders of limousine certificates from providing transportation to DHHS clients. DHHS' analysis indicated that for areas outside the Lincoln and Omaha metropolitan areas, the amendments would eliminate all carriers except for taxicab companies and two contract carriers from providing transportation for DHHS clients.
Various individuals spoke at the hearing, including attorneys representing DHHS; A-1; and R & F Hobbies, Inc., doing business as Prince of the Road (R & F Hobbies). The attorney for DHHS reiterated the concerns expressed in DHHS' written comments regarding the effect on transportation for DHHS clients.
The attorney for A-1 testified in opposition to the proposed definitions. A-1 holds a limousine certificate. The attorney for A-1 testified regarding statistics that over 50 percent of the business of the nation's top limousine services, and 60 percent of A-1's business, involved sedantype transportation rather than the traditional stretch limousines. Such business would be eliminated under the definitions proposed by the PSC. The attorney for A-1 testified that approximately 40 to 45 percent of A-1's business came from providing transportation to DHHS clients. Although the Running Horse order had included a wide variety of vehicles in its definition of "limousine service," the attorney for A-1 testified that A-1 had not explicitly relied on the Running Horse order to determine it could provide transportation services to DHHS clients, but, rather, it had been informally advised by PSC personnel in approximately July 2000 that A-1 could provide such services under its existing certificate. The A-1 attorney indicated that A-1 had relied on such advisement. In addition, the attorney for A-1 raised concerns that the process by which the new definitions had been adopted did not comply with the Administrative Procedure Act or with due process requirements.
The attorney for R & F Hobbies testified in support of the proposed definitions of "limousine" and "limousine service." He testified that R & F Hobbies held a certificate with authority to provide passenger-van transportation. He further testified that the new definitions of "limousine" and "limousine service" would not eliminate transportation services to DHHS clients because R & F Hobbies and other carriers with proper certificates of authority *656 were able to provide such services statewide.
Representatives of various taxicab companies testified in support of the definitions and asserted there was a need to end an expansion of the definition of "limousine service" by holders of limousine certificates. Representatives of limousine companies other than A-1 testified to express concern that the definitions were too restrictive because they excluded luxury sedans and other luxury vehicles.
Following the hearing, the PSC entered an order on April 3, 2001, from which this appeal is taken by A-1. The PSC order stated that the PSC was focused on the objective of establishing interim policies prior to proceeding with formal rulemaking. The order had two purposes: (1) to interpret the scope of authority under existing rules as to those businesses that had been granted certificates and (2) to begin preparations for rulemaking regarding the definitions of various service categories and vehicles.
In regard to the definition of "limousine," the PSC stated in the April 3, 2001, order that from the written comments received and the testimony presented at the March 14 hearing, it was apparent that the definitions in the January 9 order should be clarified. The PSC determined the definition of "limousine" in the January 9 order was too restrictive given the growing trend in the limousine industry to use sedans and other types of vehicles for luxury transportation. The PSC reiterated its intention to limit "limousine service" to that "type of luxury transportation which has been traditionally associated with limousine transportation." The PSC found that the definitions in the January 9, 2001, order should be amended as follows:

Definition of "limousine": Limousine shall mean a vehicle used to provide limousine service.

Definition of "limousine service": Limousine service shall consist of all of the following elements: (i) the business of carrying passengers for hire by a vehicle (ii) along a route under the control of the person who hired the vehicle and not over a defined regular route (iii) on a prearranged and not on a demand basis (iv) at a premium fare.

Definition of "premium fare": Premium fare means a rate based on an hourly rental of not less than one hour at a scheduled rate which shall be set and periodically reviewed by the Commission and which shall include a minimum rental time of one hour. A mileage charge may be assessed for transportation of the vehicle only for the time before and after the transportation service is provided and only in addition to the minimum hourly charge as provided by this definition.
The PSC ordered that effective April 3, 2001, the scheduled rate for limousine service should not be less than $50 per hour with a 1-hour minimum charge required.
The PSC specifically noted its intention in establishing the definitions that limousine operators would not be allowed to provide transportation for clients of DHHS and other similar state and federal agencies. The PSC also noted that the new definition of limousine allowed for the use of luxury sedans and other types of luxury vehicles. The PSC stated that the changes to the definitions did not justify an extension of the deadline for enforcement of the January 9, 2001, order. The PSC stated that on April 10, all certificate holders would be expected to adhere to the policy articulated in the January 9 order and that current certificate holders affected by the policy could seek new, additional, and/or modified authority under the new categories of service recommended in the second section of the April 3 order. The *657 PSC finally noted that "detailed refinements may still be needed in the future to fully address the problems described in our January 9 order" and that the forthcoming rulemaking process would allow the opportunity to make those adjustments.
In the second section of the April 3, 2001, order, the PSC stated that its rules expressly recognized categories of passenger service in addition to limousine service, including taxi, charter, and special party services. Additional descriptions of service had also been recognized by the PSC in authorities granted. Such descriptions had been developed to accommodate an evolving industry. The PSC particularly noted that the demand for service for DHHS clients had "dramatically changed the passenger service landscape in the State." The PSC therefore proposed the formal establishment of categories of service for "taxi service" and "open class service." The categories were defined as follows:

Taxi Service: Taxi service shall consist of all of the following elements: (i) the business of carrying passengers for hire by a vehicle, subject to the provisions of Rule 011.01D, (ii) along the most direct route between the points of origin and destination or a route under the control of the person who hired the vehicle and not over a defined regular route (iii) on a prearranged or demand basis (iv) at a metered, mileage-based or per trip fare, subject to the provision of Rule 011.01F, (v) commencing within, and/or restricted to, a defined geographic area.

Open Class Service: Open class service shall consist of all of the following elements: (i) the business of carrying passengers for hire by a vehicle (ii) along the most direct route between the points of origin and destination or a route under the control of the person who hired the vehicle and not over a defined regular route (iii) on a prearranged or demand basis (iv) at a mileage-based or per trip fare.
The PSC then stated that it was considering the addition of various rules including a rule that would require a carrier to obtain a special designation as a carrier of clients of DHHS and other similar state and federal agencies and programs.
The PSC concluded the April 3, 2001, order by ordering (1) that the definitions of "limousine service," "premium fare," "taxi service," and "open class service" as defined within the order be adopted as proper policy interpretations of its motor carrier rules and regulations and (2) that the proposed amendments concerning taxi service and open class service be open to public comment and that initial comments be filed on or before April 20.
On April 5, 2001, A-1 filed a notice of appeal of the April 3 order. Various parties were certified as interested parties in the proceedings before the PSC. In addition to the appellee's brief filed by the PSC, an appellee's brief was filed by R & F Hobbies.

ASSIGNMENTS OF ERROR
A-1 alleges, restated, (1) that the PSC promulgated the April 3, 2001, order in excess of its authority and in violation of the Administrative Procedure Act; (2) that the order was arbitrary and capricious, not supported by competent evidence, an abuse of discretion, and contrary to law; and (3) that the order was promulgated without proper due process.

STANDARDS OF REVIEW
The appropriate standard of review for appeals from the PSC is a review for errors appearing on the record. In re Application of Neb. Pub. Serv. Comm., 260 Neb. 780, 619 N.W.2d 809 (2000).
*658 When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id.
Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. Id.

ANALYSIS
Jurisdiction and Scope of Review.
The PSC and R & F Hobbies contend the April 3, 2001, order is not appealable by A-1. We do not agree.
Although we have stated that orders of the State Railway Commission, which is now the PSC, see State ex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991), are "interlocutory" and not final, where substantial rights of the parties remain undetermined and the cause is retained for further actions, we have also stated that "`[w]hether or not a decision is denominated an `order,' it is not reviewable unless and until it imposes an obligation, denies a right, or fixes some legal relationship as a consummation of an administrative process ...'." Houk v. Beckley, 161 Neb. 143, 150, 72 N.W.2d 664, 668 (1955) (quoting 73 C.J.S. Public Administrative Bodies and Procedure § 186 (1951)). The April 3, 2001, order defined the meaning of "limousine" and "limousine service" as used in the PSC's existing rules and regulations, and as a result of the April 3 order, A-1 was denied permission to transport certain individuals under the limousine certificate it held, which denial was contrary to permission previously accorded to A-1 by the PSC. The issue of the scope of A-1's authority under its certificate was not retained for further action, but instead, A-1 was directed to comply with the terms of the April 3 order.
Neb.Rev.Stat. § 75-136 (Cum. Supp.2000) generally provides for the review of orders of the PSC by this court. The April 3, 2001, order of the PSC was issued pursuant to Neb.Rev.Stat. § 75-118.01 (Reissue 1996), which authorizes the PSC "to determine ... the scope or meaning of a certificate, ... rule, or regulation." In In re Petition of G. Kay, Inc., 219 Neb. 24, 361 N.W.2d 182 (1985), we concluded that; § 75-136 authorized this court to review an order of the PSC interpreting a certificate pursuant to the PSC's authority under § 75-118.01. We logically conclude that § 75-136 also authorizes this court to review an order of the PSC, such as the April 3 order, interpreting a rule or regulation pursuant to the PSC's authority under § 75-118.01 where, as here, such order denied A-1 an existing benefit.
Regarding the scope of this court's review of a PSC order pursuant to § 75-136, we have stated, "In an appeal to the Supreme Court from an order of the PSC, administrative or legislative in character, the only questions to be determined are whether the PSC acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made." In re Application of E. Neb. Nonstock Trucking Coop., 243 Neb. 662, 664, 501 N.W.2d 712, 713-14 (1993). A review of the April 3, 2001, order shows it to be "administrative or legislative in character," and we therefore consider A-1's assignments of error to the extent they assert (1) that the PSC acted outside the scope of its authority and (2) that the order is unreasonable and arbitrary.
Scope of Authority.
The scope of the PSC's authority is defined in chapter 75 of the Nebraska Revised Statutes. Section 75-118.01 provides *659 that the PSC "shall have original exclusive jurisdiction to determine the validity of a rule or regulation and the scope or meaning of a certificate, permit, tariff, rule, or regulation." In addition, Neb.Rev. Stat. § 75-304 (Reissue 1996) provides that the PSC
may establish such just and reasonable classifications of groups of carriers, included in the terms common carrier and contract carrier, as the special nature of the services performed by such carriers require and adopt and promulgate such just and reasonable rules, regulations, and requirements, to be observed by the carrier so classified or grouped, as the commission deems necessary or desirable in the public interest and as are consistent with the provisions of sections 75-301 to 75-322.
In the April 3, 2001, order, the PSC, inter alia, adopted definitions of "limousine," "limousine service," and "premium fare" as interpretations of those terms as used in its rules and regulations which classify groups of carriers. The actions taken by the PSC in the April 3 order were generally within its authority under § 75-304 to establish just and reasonable classifications of groups of carriers and, specifically, within its authority under § 75-118.01, to determine the meaning of its own rules and regulations establishing such classifications.
A-1 asserts that the PSC acted outside the scope of its authority because it adopted rules and regulations without following the rulemaking procedures required under the Administrative Procedure Act and without due process. We reject A-1's arguments. The January 9 and April 3, 2001, orders, by their terms, both indicate that rather than establishing new rules, such orders are preliminary steps in a formal rulemaking process being undertaken by the PSC. As part of that process, in the April 3 order, the PSC adopted interpretations of certain existing rules and regulations which refer to limousines and limousine service. The PSC, in the April 3 order, did not adopt new rules or regulations, but instead, interpreted existing rules and regulations pursuant to its authority under § 75-118.01. Although such interpretations might be incorporated into rules and regulations to be adopted at some point in the future, the January 9 and April 3 orders indicate that such a rulemaking process was ongoing and was not complete at the time those orders were issued. The April 3 interim order did not adopt rules or regulations, a fortiori, the PSC did not adopt rules or regulations in violation of the rulemaking procedures required under the Administrative Procedure Act.
A-1 also argues that the April 3, 2001, order was issued without due process. In the January 9 order, A-1 and other interested parties received notice of the PSC's proposed interpretations of "limousine" and "limousine service." A-1 and other interested parties were given the opportunity to participate in the March 14 hearing prior to the PSC's issuance of the April 3 order. A-1 participated in the hearing. Assuming without deciding that A-1 had a protected interest, such notice and hearing were sufficient to satisfy the due process required in connection with the PSC's authority to interpret its rules and regulations. See Benitez v. Rasmussen, 261 Neb. 806, 626 N.W.2d 209 (2001) (procedural due process requires that parties deprived of liberty or property interests be provided adequate notice and opportunity to be heard).
We conclude that the PSC acted within the scope of its authority in the April 3, 2001, order. We therefore reject A 1's claims that the PSC acted outside the *660 scope of its authority in issuing the April 3 order.
Unreasonable or Arbitrary.
Having determined the PSC acted within the scope of its authority, the only other question for this court to determine in this review of the PSC's April 3, 2001, order is "whether the order complained of is reasonable and not arbitrarily made." See In re Application of E. Neb. Non-stock Trucking Coop., 243 Neb. 662, 664, 501 N.W.2d 712, 714 (1993). We conclude that the April 3 order was reasonable and not arbitrarily made, and we reject A-1's claim to the contrary.
In reviewing a decision of the PSC, it is not the province of an appellate court to weigh or resolve conflicts in the evidence or the credibility of the witnesses; rather, an appellate court will sustain the decision of the PSC if there is evidence in the record to support its findings. In re Application of Neb. Pub. Serv. Comm., 260 Neb. 780, 619 N.W.2d 809 (2000). If there is evidence to sustain the findings of the PSC, an appellate court cannot substitute its judgment for that of the PSC. Id. Determinations by the PSC are a matter peculiarly within its expertise and involve a breadth of judgment and policy determination that will not be disturbed by an appellate court in the absence of a showing that the action of the PSC was arbitrary or unreasonable. Id. The striking of the balance between the competing interests of legitimate competition and the protection of the public interest is a matter of legislative and administrative determination peculiarly resting in the judgment of the PSC. In re Application of Jantzen, 245 Neb. 81, 511 N.W.2d 504 (1994).
A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis that would lead a reasonable person to the same conclusion. In re Application of Neb. Pub. Serv. Comm., supra. An action taken by an administrative agency in disregard of the facts or circumstances of the case and without some basis which would lead a reasonable and honest person to the same conclusion is arbitrary and capricious as a matter of law. Id. A capricious decision is one guided by fancy rather than by judgment or settled purpose; such a decision is apt to change. Id.
Before issuing the April 3, 2001, order, the PSC had issued the January 9 order which stated proposed definitions for "limousine," "limousine service," and "premium fare." The January 9 order also stated that the PSC would take public comment on the proposed definitions, and on March 14, the PSC held public hearings to address, inter alia, the issues raised in the January 9 order. Various holders of limousine certificates, including A-1; various holders of taxicab certificates; and representatives of DHHS provided their comments on the issues either in written form, at the public hearing, or both. Certain limousine certificate holders stated that the definitions in the January 9 order were too restrictive because they eliminated the use of certain types of luxury vehicles from the definition of limousine service. A-1 and representatives of DHHS expressed concerns regarding the effect the definitions would have on the ability of holders of limousine certificates to provide transportation for DHHS clients. Certain taxicab certificate holders spoke in support of the definitions in the January 9 order and expressed concern that prior to the January 9 order, the definition of limousine service had been expanded beyond the original intent of the PSC rules and regulations creating the classification of limousine service and that such an expanded definition was harmful to the business of taxicab certificate holders. After considering *661 the comments and testimony of the various interested parties, the PSC, in the April 3 order, modified its definitions from the January 9 order in a manner that, inter alia, included additional luxury vehicles within the scope of limousine service and excluded transportation of HHS clients by newly defined limousine service.
Our review of the record in this case indicates that evidence in the record was adequate to sustain the findings and determinations made by the PSC in the April 3, 2001, order. The PSC was required to strike a balance between competing interests, and the striking of such balance was "a matter of legislative and administrative determination peculiarly resting in the judgment of the PSC." In re Application of Jantzen, 245 Neb. at 100, 511 N.W.2d at 517. The PSC's policy determination will not be disturbed by this court in the absence of a showing that the action of the PSC was arbitrary or unreasonable. Considering the record before the PSC, the April 3 order of the PSC is not arbitrary or unreasonable. We therefore reject A-1's assignments of error claiming that the April 3 order was arbitrary and unreasonable.

CONCLUSION
We conclude that the PSC acted within the scope of its authority in issuing the April 3, 2001, order and that the order was reasonable and not arbitrarily made. We therefore reject A 1's assignments of error on appeal and affirm the order of the PSC.
AFFIRMED.