682 N.W.2d 259 (2004)
268 Neb. 281
David J. CAMPBELL, Appellee,
v.
CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM BOARD OF TRUSTEES, Appellant.
No. S-03-408.
Supreme Court of Nebraska.
July 2, 2004.
*261 Mark E. Novotny and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellant.
Thomas M. White, Michaela M. White, and C. Thomas White, of White & Wulff, Omaha, for appellee.
HENDRY, C.J., and CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
The City of Omaha Police and Fire Retirement System Board of Trustees granted Officer David J. Campbell a disability pension based on a service-connected injury to his T6 vertebra that occurred in 1993. Campbell filed a petition in error, and the district court for Douglas County determined that the board of trustees erred in calculating the amount of the pension and further erred in basing it solely on the T6 injury. The board of trustees filed this timely appeal.

BACKGROUND
Campbell began his service as an Omaha police officer in 1974. On February 20, 1993, Campbell was injured when his police cruiser, which was parked at the scene of an accident investigation, was struck from the rear by a motorist who lost control of a vehicle while traveling on Interstate 680 in Omaha, Nebraska. Campbell suffered a thoracic compression fracture of his T6 vertebra and a neck injury. Subsequently, he suffered a right shoulder injury and aggravated the neck injury during a struggle to effectuate an arrest on February 14, 2000; an aggravation of the shoulder and neck injuries during shotgun qualification training on August 10; and a further aggravation of the thoracic compression fracture and shoulder and neck injuries during self-defense training on January 2, 2001. He also suffered from hypertension in the years following the 1993 motor vehicle accident. It is generally undisputed that Campbell is no longer physically fit for active duty with the Omaha Police Department.
Campbell filed an action against the City of Omaha under the Americans with Disabilities Act, and a jury returned a verdict in his favor in late 2000. He subsequently perceived that the city was engaging in retaliatory behavior toward him and filed another suit against the city. On December 3, 2001, Campbell and the city entered into a written settlement agreement which provided that Campbell would receive $7,814.17 as "Back Pay," $50,000 as "Front Pay," $200,000 for "Pain and Suffering and Compensatory Damages," and $175,000 in "Attorney Fees." The agreement further provided in relevant part:
The back pay will be tendered to David Campbell retroactively and applied during the period of February 1, 1999 through December 2000 through the regular City payroll and subject to all normal deductions for taxes and pension benefits.
The front pay will be tendered to David Campbell in thirteen (13) equal installments through the regular City payroll (in addition to his current salary) and subject to all normal deductions for taxes and pension benefits, commencing on December 10, 2001, or the first pay period thereafter, and continuing each following pay period for a total of thirteen (13) pay periods. The City agrees that the front pay described above represents the amount a Sergeant in the Omaha Police Department could earn in a fiscal year in addition to his normal *262 salary through overtime and other special pay for testimony, training, etc.
The parties agree that David Campbell, by virtue of the decision not to promote him to Sergeant, was denied the opportunity to earn such additional monthly compensation. Therefore, as part of the settlement and compromise of this litigation the City of Omaha and David Campbell specifically agree that the front and back pay shall be considered to be "monthly compensation" included in the amounts used to calculate his pension benefits as defined in Omaha Municipal Code Chapter [2]2, Art. III, Section 22-76 (1996) and Brunken v. Board of Trustees of City of Omaha Police and Fire Retirement System, 261 Neb. 626, 624 N.W.2d 629 (2001). It is in reliance on this agreement that David Campbell agrees to retire as is provided for subsequently in this document.
Arguments presented to the board of trustees further clarified that the settlement agreement was intended to acknowledge that Campbell was illegally passed over for sergeant and to compensate him as he would have been had he been lawfully promoted.
On April 12, 2002, Campbell filed an application with the board of trustees for a service-connected disability pension due to hypertension, neck disorder, T6 compression fracture, and right shoulder disorder. On June 20, the board of trustees heard the application and received evidence in support thereof, but deferred ruling on it for 30 days, or until July 18. At the July 18 meeting of the board of trustees, Campbell reoffered all of the exhibits he originally offered at the June 20 hearing. At the close of the July 18 meeting, the board of trustees again deferred ruling on the application. Campbell thereafter successfully sought a writ of mandamus ordering the board of trustees to make a decision on his application at its August 15 meeting.
During the August 15, 2002, hearing, Campbell again offered into evidence all exhibits offered at the previous hearings, as well as a transcript of the July 18 hearing. After considering the evidence before it and various options for how to calculate Campbell's pension benefit, the board of trustees determined that Campbell's pension benefit would be calculated based solely on his salary as a patrolman, without considering the additional amounts he received monthly pursuant to his settlement agreement with the city. The board of trustees further determined that the sole basis of the disability pension was the injury Campbell received to his T6 vertebra in the 1993 accident.
Campbell filed a petition in error in the district court for Douglas County, contending that the board of trustees improperly refused to calculate his pension benefit based upon his monthly compensation received pursuant to the settlement agreement and further erred in relating his disability solely to the injury suffered to his T6 vertebra in the 1993 accident. The district court concluded that the board of trustees erred in calculating Campbell's pension and in determining the disabling injury, and remanded the cause to the board of trustees with directions to make an appropriate award. The board of trustees filed this timely appeal.

ASSIGNMENTS OF ERROR
The board of trustees assigns, restated, that the district court erred in (1) finding that the board of trustees should have considered the settlement between Campbell and the City of Omaha in calculating Campbell's disability benefit and (2) finding that the board of trustees incorrectly determined the basis for Campbell's disability benefits.

*263 STANDARD OF REVIEW
In reviewing the decision of an administrative board on a petition in error, both the district court and the appellate court review the decision of the board to determine whether it acted within its jurisdiction and whether the decision of the board is supported by sufficient relevant evidence. Cornett v. City of Omaha Police & Fire Ret. Sys., 266 Neb. 216, 664 N.W.2d 23 (2003). The evidence is sufficient, as a matter of law, if an administrative board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. Id.
Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. Brunken v. Board of Trustees, 261 Neb. 626, 624 N.W.2d 629 (2001).

ANALYSIS

CALCULATION OF DISABILITY BENEFIT
In its first assignment of error, the board of trustees contends that the district court erred in finding that its calculation of the amount of Campbell's disability pension benefit was improper. This assignment requires us to examine the evidence offered before the board of trustees and the applicable sections of the Omaha Municipal Code.
The record includes medical records and copies of relevant portions of the Omaha Municipal Code which Campbell submitted to the board of trustees in support of his application for a service-connected disability pension. Chapter 22, article III, of the Omaha Municipal Code is entitled "Police and Fire Retirement System." The award of disability pensions is governed by Omaha Mun.Code, ch. 22, art. III, § 22-78 (1996), which provides in relevant part:
Any member of the system who, while in the line of duty, has sustained or shall sustain injuries or sickness, arising out of the immediate or direct performance or discharge of his/her duty, which immediately or after a lapse of time permanently unfit such annuitant for active duty in his/her department, shall receive a monthly accidental disability pension as long as such annuitant remains unfit for active duty in such member's department, equal to 50 percent of such member's average final monthly compensation. In addition thereto, such annuitant shall be paid medically necessary covered services which may be incurred as a result of such sickness or injury.
(Emphasis supplied.) Omaha Mun.Code, ch. 22, art. III, § 22-63 (1995) defines "[a]verage final monthly compensation" as used in article III as "[t]he member's highest average monthly compensation during any consecutive 26 pay periods, during the member's last five years of service as a member of the system for which service credit has been earned."
The dispute in this case is whether the board of trustees erred in ignoring Campbell's settlement agreement with the city and the resulting increase in his monthly pay when determining his "average final monthly compensation." We addressed a similar issue in Brunken, supra, and both parties rely on Brunken to support their arguments. In that case, Donald E. Brunken, an Omaha firefighter, applied for general retirement benefits under Omaha Mun.Code, ch. 22, art. III, § 22-76 (1996). Section 22-76 is the provision for age-related retirement, and its provisions are very similar to § 22-78. Most notably, § 22-76 provides in relevant part that participants in the city's fire and police *264 systems "`shall be entitled, upon ... retirement, to a monthly service retirement pension payable each month for the remainder of [his or her] natural life after retirement equal to [a certain percentage] of the member's highest average monthly compensation' during any year of the member's last 5 years of service." (Emphasis supplied.) Brunken, 261 Neb. at 627, 624 N.W.2d at 631. Brunken argued that the board of trustees erred in calculating his retirement pension because it refused to consider a one-time, lump-sum payment he received in 1995 of $7,117.38, representing retroactive wages from 1994, in his overall total income for the year 1995. The retroactive wage payment was a result of contract negotiations between the firefighters and the city.
In analyzing Brunken's claim, we determined that although the backpay was part of his total compensation for the year 1995, it was not "monthly compensation" as contemplated by § 22-76 because it was a one-time payment, not "regular compensation received every month." Brunken v. Board of Trustees, 261 Neb. 626, 632, 624 N.W.2d 629, 634 (2001). We thus determined that the "`happenstance'" receipt of the backpay in 1995 did not alter Brunken's regular "monthly compensation" in that year and that thus, the board of trustees did not err in calculating Brunken's retirement benefit without reference to the lump-sum backpay. Id.
In this action, the board of trustees argues that Campbell's receipt of the moneys outlined in his settlement agreement with the city is similarly only happenstance. In addition, the board of trustees contends that it should not be bound by the settlement agreement, to which it was not a party, when calculating Campbell's disability pension benefits.
As an initial matter, we note that the clear language of § 22-78 does not give the board of trustees discretion in calculating pension benefits. The board of trustees' sole duty under § 22-78 is to award a disability pension based upon a member's "average final monthly compensation." Thus, if Campbell's agreement with the city results in a higher average monthly compensation than he would otherwise receive, the board of trustees is bound to award him a disability pension based upon that amount regardless of whether it was privy to the settlement agreement. The issue is not whether the board of trustees is bound by Campbell's settlement with the city, but, rather, whether certain funds which Campbell actually received pursuant to the settlement were part of his "monthly compensation" as that term is defined under the applicable ordinance.
In this respect, the instant case is distinguishable from Brunken, which involved a single lump-sum payment for backpay. The settlement agreement at issue in this case specifically and clearly provides that the front pay awarded to Campbell was to be disbursed through the regular city payroll in regular monthly installments. Moreover, it is equally clear from the terms of the settlement agreement that its purpose was to put Campbell in the position he would have been in had the city lawfully promoted him to the rank of sergeant, and thus the fact that the additional payments were regularly awarded on a continuing monthly basis for 13 months was hardly happenstance. Because Campbell was thus receiving regular monthly compensation in an amount greater than that considered by the board of trustees in calculating his pension benefit, its calculation was not based upon sufficient relevant evidence and the district court correctly concluded that the board of trustees erred in making its calculations.

*265 BASIS OF DISABILITY PENSION
In its second assignment of error, the board of trustees contends that the district court erred in finding that there was not sufficient relevant evidence to support its decision to base the disability pension on Campbell's T6 injury. Campbell requested a pension based on disability for "Hypertension, Neck Disorder, Right Shoulder Disorder, and T-6 Compression Fracture." According to the transcript of the August 15, 2002, meeting, the board of trustees awarded Campbell a "service-connected disability for T6." The district court found that the board of trustees erred in not awarding the disability pension based also on "various physical conditions [Campbell] incurred while in the course of duty after February 20, 1993." The basis of the disability pension is significant because § 22-78 provides that the disabled member will be paid, in addition to the disability pension, for "medically necessary covered services which may be incurred as a result of" the injury forming the basis of the disability pension.
The board of trustees argues in its brief that there is sufficient relevant evidence in the record to support its award of the disability pension based solely on the 1993 injury. Notably, however, the record clearly reveals that the disability pension was not based on "the 1993 injury," but, rather, on only the T6 injury which Campbell sustained in the 1993 motor vehicle accident. It appears that the board of trustees simply ignored substantial evidence in the record that Campbell suffered other service-related injuries in that accident and afterward.
The board of trustees relies heavily upon a June 10, 2002, "DISABILITY EVALUATION REPORT" submitted by Dr. Dean K. Wampler. However, in doing so, the board of trustees appears to mischaracterize the findings in this report. A review of the report reveals that Wampler found nine "Diagnoses" for Campbell:
1. Chronic Cervical Pain (connected to 1993 work injury).
2. Chronic Headaches (connected to 1993 work injury).
3. Interscapular Thoracic Pain (caused by T6 compression deformity in 1993 injury).
4. Right Shoulder Impingement and AC Joint Arthritis (alleged due to work injury of 2/00).
5. Bilateral Upper Extremity Paresthesia (cause unknown).
6. Past History of Lumbar Strain (cause not evaluated).
7. Hypertension (cause alleged to work related stresses).
8. Situational Anxiety and Single Panic Attack (alleged to work-related stresses).
9. Cervical Degenerative Spine Disease (condition of life).
In his "Treatment Suggestions" following his diagnoses, Wampler noted that Campbell remained symptomatic for all of his conditions. In stating his prognosis, Wampler concluded that Campbell's "neck and upper back" symptoms would remain largely unchanged over time and that it was unknown whether his high blood pressure could be controlled adequately. Finally, in assessing Campbell's "Work Abilities," Wampler concluded:
Mr. Campbell has conditions that make him medically unsuitable for many duties of an Omaha Police Officer. Limitations resulting from his medical conditions include restriction from potentially combative suspects through arrests or interrogation. More importantly, his perceived level of stress and its aggravation to his high blood pressure will be a problem in many circumstances, including office work. *266 Wampler stated that Campbell's hypertension "requires continuous medication treatment."
Taken as a whole, Wampler's report does not constitute sufficient relevant evidence to support the board of trustees' decision to limit the basis of Campbell's disability to only the T6 compression fracture sustained in 1993. Notably, Wampler diagnosed Campbell with injuries related to the 1993 accident other than the T6 injury, as well as other injuries related to subsequent events. Additional evidence in the record further documents those injuries and the fact that they are service related. Moreover, Wampler's report puts significant weight upon the disabling effects of Campbell's hypertension, which is attributed by Wampler to general work stresses and is not specific to either the 1993 accident or the T6 compression fracture. Wampler's report, therefore, does not support the board of trustees' position. Rather, it establishes that Campbell's inability to continue work as a police officer, and thus his disability, is based on various conditions, including those arising from the 1993 accident and his subsequent service-related injuries and conditions. For these reasons, the district court correctly reversed the board of trustees' award of a disability based solely on the T6 injury.

CONCLUSION
The board of trustees has no discretion under the Omaha Municipal Code to determine the amount of disability pension that should be awarded to a retirement system member. Instead, it is required to award a disability pension based upon the member's "average final monthly compensation" as that term is defined by § 22-63. Because Campbell was paid additional compensation pursuant to his settlement with the city in regular monthly installments, the board of trustees erred in disregarding these amounts in calculating his final monthly compensation. Moreover, the board of trustees' decision to award the disability pension based solely on the 1993 T6 compression fracture is not supported by sufficient relevant evidence, as the record clearly establishes that Campbell's disability and resulting lack of fitness for duty are due to this and other service-related injuries and illnesses. For the foregoing reasons, we affirm the judgment of the district court reversing the decision of the board of trustees and remanding the cause to the board of trustees for recalculation of Campbell's disability retirement benefits in a manner consistent with its opinion.
AFFIRMED.
WRIGHT, J., participating on briefs.