CHASE 3000, INC., APPELLEE AND CROSS-APPELLEE, V. NEBRASKA PUBLIC SERVICE COMMISSION AND QWEST COMMUNICATIONS CORPORATION, APPELLEES AND CROSS-APPELLANTS, AND NEBRASKA TELECOMMUNICATIONS ASSOCIATION, APPELLANT, AND UNITED TELEPHONE COMPANY OF THE WEST, DOING BUSINESS AS SPRINT AND SPRINT COMMUNICATIONS COMPANY, L.P., ET AL., APPELLEES.

728 N.W.2d 560

Filed March 2, 2007. No. S-05-935.

Jack L. Shultz and Gregory D. Barton, of Harding, Shultz & Downs, for appellant.

Jon Bruning, Attorney General, and L. Jay Bartel for appellee Nebraska Public Service Commission.

Steven G. Seglin and Thomas E. Jeffers, of Crosby Guenzel, L.L.P., for appellee Chase 3000, Inc.

Jill Vinjamuri Gettman and Michael J. Mills, of Gettman & Mills, L.L.P., for appellee Qwest Communications Corporation.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This case requires us to determine whether there is a statutory right of appeal from an order of the Nebraska Public Service Commission (Commission) declining to exercise its rulemaking authority. We conclude that such an order is appealable under the procedures set forth in the Administrative Procedure Act (APA), Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006). We further conclude that the district court erred in reversing the order of the Commission which is the subject of this appeal.

## FACTS

On May 21, 2004, Chase 3000, Inc., a Nebraska Internet service provider (ISP), and several other ISP's filed a petition with the Commission requesting it either to initiate a rulemaking proceeding to establish rules applicable to the relationship between an incumbent local exchange carrier (ILEC) and its affiliated companies or, in the alternative, to initiate an investigation to allow public comment on the use of resources held by a monopoly that may be protected from competition. As paraphrased by the Commission, the petition requested that the Commission consider 11 separate issues as follows:

(1) Whether the Commission should establish regulations controlling the permissible relationship between ILEC's and their affiliates.

(2) Whether the details of the financial relationship of a regulated company with its affiliate company should be open to the public.

(3) Whether the sale of regulated services to an affiliate company and a nonaffiliated company be priced the same.

(4) Whether there should be a reasonableness test for all financial transactions between an ILEC and its affiliate company.

(5) What accounting requirements should be imposed on affiliated companies where a majority share of the affiliate is owned by the ILEC.

(6) Whether affiliate companies, whose stock is partially or wholly owned by an ILEC, should be subject to the same rules and regulations as the ILEC.

(7) Whether an ILEC, via its affiliate, can use predatory pricing to win a market share. Can a rate list, designed to assure the same price for the same service, be circumvented by having the affiliate company offer the service?

(8) Should a subsidized monopoly be allowed to use funds derived from said company to subsidize an affiliate and use it to compete with nonaffiliated businesses in providing nonregulated services?

(9) Should the ILEC be allowed to use resources such as buildings, tools, airplanes, vehicles, et cetera, to assist the affiliate company? If a competitor to the affiliate company wanted equal access to such resources, should it be possible to purchase access at the same rate paid by the affiliate?

(10) Should affiliate companies be able to provide services to the ILEC on a noncompetitive basis and at nonmarket rates? What protections exist to assure an accurate reflection of the cost of providing regulated services?

(11) If rules are ultimately promulgated, what remedies should be made available to the parties for violations of such rules?

By written order, the Commission sought public comment on the questions raised by the petition. The Nebraska Telecommunications Association (NTA) filed a petition for a declaratory ruling, arguing that the Commission lacked jurisdiction to either conduct a rulemaking proceeding or engage in an investigation of an ILEC's nonregulated affiliates. NTA then filed a motion to stay the proceedings pending resolution of its petition for declaratory ruling. The Commission denied the motion to stay but ruled that the parties could address the jurisdictional issue when submitting comments.

Several entities filed comments, including Chase 3000, NTA, Qwest Communications Corporation, and AT&T

Telecommunications of the Midwest, Inc. (AT&T). On September 21, 2004, the Commission entered an order closing the investigation in which it concluded:

Upon consideration of the Petition . . . and all comments filed in the . . . proceeding, the Commission is of the opinion and finds that it lacks jurisdiction to enact rules which generally govern a non-regulated affiliate of a local exchange carrier as the Petitioners' [sic] request.

The Commission agrees with the comments filed by the NTA that its jurisdiction is limited, extending to common carriers engaged in furnishing telecommunications services for hire in Nebraska. The Petition appears to be seeking a set of rules which would either directly or indirectly decide how non-regulated affiliate companies should be structured, and how they should operate.

. . . .

The Commission's jurisdiction does not extend to non-regulated services or rates provided by affiliates of common carriers who are not required to be certificated in the state, except as it relates to universal service and E911 as otherwise provided for in statute. . . .

That is not to say that such affiliates are not subject to any oversight. The Federal Communications Commission (FCC) has rules which govern how the ILECs must account for transactions with their affiliates. The FCC's rules impose auditing and reporting requirements and extend to services offered in state tariffs.

Moreover, as it pertains to the regulated entity itself, there are provisions in both state and federal law which prohibit discriminatory pricing. If there is a case for discriminatory pricing or anti-competitive behavior by an ILEC, it should be brought before the FCC or the Commission for determination under its jurisdiction to resolve complaints related to activities of the regulated common carriers.

However, at this point, the Commission is without evidence that there is a problem of statewide magnitude. It appears unnecessary to create additional rules applicable to all entities to resolve complaints relating to one or a few,

particularly, if they involve reporting duplicative information already provided to the FCC.

Chase 3000 filed a petition for judicial review in the district court for Lancaster County pursuant to the APA and Neb. Rev. Stat. §§ 75-136 (Reissue 2003) and 86-158 (Cum. Supp. 2006). No other entity appealed the order. In an order filed on June 29, 2005, the district court held that the Commission "erred in determining it was without jurisdiction to enact rules governing the relationship between ILECs and their nonregulated affiliates." Based on this interpretation of the Commission's order, the district court reversed and determined that the cause should be remanded to the Commission for an "investigation into whether or not a general rule or a case by case analysis is most appropriate." NTA filed this timely appeal, and the Commission and Qwest Communications Corporation cross-appealed; all urged reversal. We moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Appellant and cross-appellants assign, restated, that the order of the district court reversing and remanding the order of the Commission was arbitrary, capricious, and contrary to law.

## STANDARD OF REVIEW

■ Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *In re Interest of Sean H.*, 271 Neb. 395, 711 N.W.2d 879 (2006); *Malolepszy v. State*, 270 Neb. 100, 699 N.W.2d 387 (2005).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Zach v. Eacker*, 271 Neb. 868, 716 N.W.2d 437 (2006); *Campbell v. Omaha Police & Fire Ret. Sys.*, 268 Neb. 281, 682 N.W.2d 259 (2004).

■ A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors

appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006); *Zach v. Eacker, supra.*

## ANALYSIS

### SUBJECT MATTER JURISDICTION

■ NTA contends that neither the district court nor this court has subject matter jurisdiction because there is no current statutory right to appeal a Commission's order declining to exercise its rulemaking authority. When a lower court lacks the authority to exercise its subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *Kaplan v. McClurg*, 271 Neb. 101, 710 N.W.2d 96 (2006); *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538 (2003). We address this threshold jurisdictional issue.

The rulemaking authority of the Commission is derived from Neb. Rev. Stat. § 75-110 (Reissue 2003), which provides that the Commission "shall adopt and promulgate rules and regulations which the commission deems necessary to regulate persons within the commission's jurisdiction." The APA authorizes any person to "petition an agency requesting the adoption of a rule or regulation." § 84-907.08. Within 60 days of the submission of the petition, the agency must "(1) deny the petition in writing, stating its reasons therefor, (2) initiate rulemaking or regulationmaking proceedings in accordance with the Administrative Procedure Act, or (3) if otherwise lawful, adopt a rule or regulation." § 84-907.08. Section 84-911 provides a procedure whereby a party may challenge the validity of an administrative rule or regulation, but there is no specific statutory provision for judicial review of an agency's decision not to exercise its rulemaking power.

Chase 3000 contends that judicial review of an order of the Commission declining to engage in rulemaking is permissible under § 75-136, which provides in relevant part: "Except as otherwise provided by law, if a party to any [Commission]

proceeding is not satisfied with the order entered by the commission, such party may appeal. Any appeal filed on or after August 31, 2003, shall be in accordance with the Administrative Procedure Act." Chase 3000 contends that § 75-136 should be read in conjunction with § 86-158, which provides that appeals from the Commission's orders entered pursuant to the Nebraska Telecommunications Regulation Act "shall be in accordance with the Administrative Procedure Act." NTA counters that because the APA provides only for an appeal of "contested cases" as defined therein, see §§ 84-901(3) and 84-917, and because all parties agree that this is not a contested case, there is no right to appeal the order. Essentially, NTA contends that the broad right to appeal conferred by the first sentence of § 75-136 is implicitly limited by the second sentence.

█ In the absence of ambiguity, courts must give effect to the statutes as they are written. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006); *McCray v. Nebraska State Patrol*, 271 Neb. 1, 710 N.W.2d 300 (2006). A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes. *Zach v. Eacker*, 271 Neb. 868, 716 N.W.2d 437 (2006); *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004). We conclude that the phrase "in accordance with the Administrative Procedure Act" as used in §§ 75-136 and 86-158 is ambiguous and therefore open to construction because it is unclear whether it means that only contested cases decided by the Commission can be appealed or that all orders of the Commission may be appealed under the procedures which the APA prescribes for appealing contested cases.

█ We apply familiar principles to resolve this ambiguity. A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. *Zach v. Eacker, supra*; *A-1 Metro Movers v. Egr*, 264 Neb. 291, 647 N.W.2d 593 (2002). In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Bohaboj v. Rausch*, 272

Neb. 394, 721 N.W.2d 655 (2006); *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005). When a statutory term is reasonably considered ambiguous, a court may examine the legislative history of the act in question to ascertain the intent of the Legislature. *Mogensen v. Board of Supervisors*, 268 Neb. 26, 679 N.W.2d 413 (2004). See *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002).

The second sentence of § 75-136 was added by amendment in 2003. See 2003 Neb. Laws, L.B. 187, § 27. Previously, the statute permitted an appeal of a Commission order "to the Court of Appeals as provided in section 75-137 to reverse, vacate, or modify the order." § 75-136 (Cum. Supp. 2002). The 2003 amendment repealed § 75-137 and other provisions governing the procedure for appealing the Commission's orders to the Nebraska Court of Appeals. See 2003 Neb. Laws, L.B. 187, § 37. During floor debate on L.B. 187, its sponsor stated that appeals from the Commission's orders would be required to "follow the Administrative Procedures [sic] Act, which means now that the appeals would have to go to the district court, not to the Court of Appeals." Floor Debate, 98th Leg., 1st Sess. 7374 (May 19, 2003). We noted in *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 685, 687 N.W.2d 188, 195 (2004), that the "primary effect of § 75-136, as amended by L.B. 187, is that operative August 31, 2003, all appeals from the [Commission] are to be brought under the APA." We find no indication that in enacting this amendment, the Legislature intended to limit the types of orders which could be appealed under § 75-136. Accordingly, we do not construe the second sentence of the statute as a substantive limitation on the first, but, rather, as a directive that all appeals from the Commission's orders are to follow the procedural requirements of the APA. See § 84-917. We similarly construe § 86-158 and therefore conclude that the district court had jurisdiction to review the order in question and that we have jurisdiction to review the order of the district court.

## MERITS OF APPEAL

The district court concluded that the Commission "erred in determining it was without jurisdiction to enact rules governing the relationship between ILECs and their nonregulated

affiliates." NTA and the Commission argue that this is a misinterpretation of the Commission's order. Generally, for purposes of construction, a rule or order of an administrative agency is treated like a statute. *Utelcom, Inc. v. Egr,* 264 Neb. 1004, 653 N.W.2d 846 (2002); *Stratbucker Children's Trust v. Zoning Bd. of Appeals,* 243 Neb. 68, 497 N.W.2d 671 (1993). Thus, to determine the meaning of the Commission's order, we must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. It is not within the province of a court to read anything plain, direct, and unambiguous out of the order. See, *Hall v. City of Omaha,* 266 Neb. 127, 663 N.W.2d 97 (2003); *Wilder v. Grant Cty. Sch. Dist. No. 0001,* 265 Neb. 742, 658 N.W.2d 923 (2003). Reading the order in its entirety, we conclude that the Commission did not simply determine that it lacked jurisdiction to proceed further in its investigation or rulemaking. Rather, it concluded (1) that it had no jurisdiction to regulate the affiliates of ILEC's; (2) that it had jurisdiction to regulate the relationship between ILEC's and their affiliates; and (3) that based upon the petition and comments received, it was unnecessary to engage in rulemaking with respect to the relationship between ILEC's and their affiliates at the present time. The order of the district court was erroneous because it misinterpreted the administrative order under review.

■ Rulemaking by an administrative agency is properly characterized as a "'legislative process as contrasted with an administrative, judicial, or quasi judicial process.'" *Johnson v. Nebraska Environmental Control Council,* 2 Neb. App. 263, 276, 509 N.W.2d 21, 29 (1993), quoting 73 C.J.S. *Public Administrative Law and Procedure* § 87 (1983). Under prior law which permitted appeals from the Commission's orders to be taken directly to the appellate courts, we stated that where the order was administrative or legislative in character, the only issues to be determined by the reviewing court were whether the Commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. See, *In re Proposed Amend. to Title 291,* 264 Neb. 298, 646 N.W.2d 650 (2002); *In re Application of E. Neb. Non-stock Trucking Coop,* 243 Neb. 662, 501 N.W.2d 712 (1993). The district court should have addressed those issues in this case. We do so here.

The fact that § 75-110 gives the Commission authority to adopt and promulgate rules and regulations which it "deems necessary to regulate persons within the commission's jurisdiction" does not require the Commission to exercise such authority in any given instance. See *In re Application No. C-1889*, 264 Neb. 167, 647 N.W.2d 45 (2002) (holding statutory authority of Commission to promulgate rules to interpret law does not impose affirmative rulemaking requirement). Under § 84-907.08, the Commission could either exercise its rulemaking power or "deny the petition in writing, stating its reasons therefor." By doing the latter, the Commission clearly acted within its statutory authority. The only remaining issue is whether it did so in a manner that was reasonable and not arbitrary.

Federal courts reviewing an agency's decision not to engage in rulemaking are required under the federal Administrative Procedure Act to determine whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). Accord *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987); *Arkansas Power & Light Co. v. I.C.C.*, 725 F.2d 716 (D.C. Cir. 1984). See, also, *Nat. Ass'n of Reg. Util. Com'rs v. Dept. of Energy*, 851 F.2d 1424 (D.C. Cir. 1988). Federal courts note that "[r]eview under the 'arbitrary and capricious' tag line [of the federal Administrative Procedure Act] encompasses a range of levels of deference to the agency" and that "an agency's refusal to institute rulemaking proceedings is at the high end of the range." *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d at 4-5, citing *WWHT, Inc. v. F. C. C.*, 656 F.2d 807 (D.C. Cir. 1981), and *ITT World Communications, Inc. v. F.C.C.*, 699 F.2d 1219 (D.C. Cir. 1983), *reversed on other grounds* 466 U.S. 463, 104 S. Ct. 1936, 80 L. Ed. 2d 480 (1984). Thus, an agency's refusal to engage in rulemaking is overturned "'only in the rarest and most compelling of circumstances'" which primarily involve "'plain errors of law, suggesting that the agency has been blind to the source of its delegated power.'" *American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d at 5, quoting *WWHT, Inc. v. F. C. C., supra*, and *State Farm Mut. Auto. Ins. v. Department of Transp.*, 680 F.2d 206 (D.C. Cir. 1982), *vacated on other grounds sub nom. Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed.

2d 443 (1983). Review is generally limited to "'ensuring that the agency has adequately explained the facts and policy concerns it relied on, and that the facts have some basis in the record.'" *Nat. Ass'n of Reg. Util. Com'rs v. Dept. of Energy*, 851 F.2d at 1430, quoting *Arkansas Power & Light Co. v. I.C.C., supra.*

We conclude that similar deference should be given to a state agency's decision not to engage in discretionary rulemaking. Here, after docketing the petition filed by Chase 3000 and other ISP's, the Commission entered an order setting forth the specific issues raised by the petitioners and requesting public comment. Several detailed written comments were received. The Commission did not conduct an evidentiary hearing, but it was not under any statutory obligation to do so. Based upon the comments it received, the Commission concluded that it was unnecessary to engage in rulemaking for several reasons. It noted that ILEC's were already subject to rules promulgated by the Federal Communications Commission which govern how the ILEC's must account for transactions with their affiliates. It further reasoned that the regulated entities were subject to state and federal laws prohibiting discriminatory pricing. The Commission concluded that there was no showing of a "problem of statewide magnitude" and that it appeared "unnecessary to create additional rules applicable to all entities to resolve complaints relating to one or a few, particularly, if they involve reporting duplicative information already provided to the FCC." Noting that some of the comments received referred to matters occurring outside Nebraska, the Commission stated that if there were specific complaints about a regulated entity's conduct in Nebraska, "a complaint should be filed setting forth specific allegations and the grounds for relief." Based upon this reasoned explanation, we conclude that the Commission did not act arbitrarily in deciding not to exercise its rulemaking authority.

## CONCLUSION

The district court erred in interpreting the Commission's order as a determination that it lacked jurisdiction to engage in the rulemaking requested by Chase 3000 and other ISP's. The Commission recognized its jurisdiction to regulate certain conduct by ILEC's but acted within its legal authority in declining to exercise that jurisdiction for reasons which were not arbitrary.

Accordingly, we reverse the judgment of the district court and remand the cause with directions to affirm the order of the Commission closing its investigation.

REVERSED AND REMANDED WITH DIRECTIONS.